UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60451-BLOOM/Valle

JHO INTELLECTUAL PROPERTY
HOLDINGS, LLC and VITAL
PHARMACEUTICALS, INC.,

      Plaintiffs,

v.

IGNITE INTERNATIONAL, LTD.,
IGNITE BEVERAGES, INC.,
and JAMES GRACELY,

      Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Ignite International, Ltd. ("Ignite International"), Ignite Beverages, Inc. ("Ignite Beverages") (collectively "Ignite"), and James Gracely's ("Gracely") (collectively, with Ignite, "Defendants")[1] Motion for Summary Judgment, ECF No. [54] ("Motion"),[2] along with their corresponding Statement of Material Facts, ECF No. [53] ("SMF").[3] Plaintiffs JHO Intellectual Property Holdings, LLC ("JHO") and Vital Pharmaceuticals, Inc.'s ("VPX") (collectively, "Plaintiffs") filed a Response in Opposition to the Motion, ECF No. [68] ("Response"),[4] and their Opposition to the SMF, ECF No. [69].[5] Defendants filed a Reply to Plaintiffs' Response, ECF No. [90] ("Reply"),[6] and their Reply to the SMF, ECF

---

[1] To clarify, for the purposes of this Order, the term "Ignite" refers to Ignite International and Ignite Beverages. The term does not refer to Gracely. The term "Defendants" refers to all three Defendants.
[2] Defendants filed an unredacted version of the Motion under seal, ECF No. [52].
[3] Defendants filed an unredacted version of the SMF under seal, ECF No. [51].
[4] Plaintiffs filed an unredacted version of the Response under seal, ECF No. [71].
[5] Plaintiffs filed an unredacted version of the Opposition to the SMF under seal, ECF No. [72].
[6] Defendants filed an unredacted version of the Reply under seal, ECF No. [88].

No. [89].[7] The Court has carefully considered the Motion, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion denied.

## I.   BACKGROUND

On February 26, 2021, Plaintiffs initiated this lawsuit against Defendants. *See generally* ECF No. [1]. Plaintiffs assert the following six counts: Count I – trademark infringement in violation of the Lanham Act § 32(1) against Ignite; Count II – trademark infringement in violation of the Lanham Act § 43(a) against Ignite; Count III – cancellation of trademark registration pursuant to Lanham Act §§ 24, 37 against Ignite International; Count IV – common law unfair competition against Ignite; Count V – breach of contract against Gracely; and Count VI – tortious interference with a contract against Ignite. *See generally id.*

Defendants assert two counterclaims: Counterclaim I – cancellation of U.S. Trademark Reg. No. 4,536,197 against JHO; and Counterclaim II – declaratory judgment of non-infringement against Plaintiffs. *See generally* ECF No. [12]. On April 9, 2021, the Court granted the parties' Joint Motion to Stay Counts V and VI of the Complaint Pending Mediation and Arbitration, ECF No. [19], and directed the parties to mediation and, if necessary, arbitration of Counts V and VI. *See* ECF No. [20].

On March 11, 2022, Defendants filed the instant Motion, seeking summary judgment in their favor as to Plaintiffs' remaining Counts against Ignite, namely Counts I, II, III, and IV, and as to Defendants' Counterclaims, namely Counterclaims I and II. *See* ECF No. [52]. On March 25, 2022, Plaintiffs filed their Response, opposing summary judgment in favor of Defendants on Plaintiffs' remaining Counts and Defendants' Counterclaims. *See* ECF No. [68].

---

[7] Defendants filed an unredacted version of the Reply to the SMF under seal, ECF No. [87].

## II.   MATERIAL FACTS

Based on the parties' statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### A.   The Z-RO Mark

Ignite International owns the Z-RO trademark ("Z-RO Mark") reflected in U.S. Trademark Registration No. 6,191,799 ("Z-RO Registration"). ECF Nos. [51] ¶ 1, [72] at 3 ¶ 1.[8] The Z-RO Registration is for use with energy drinks in International Class 32. ECF Nos. [51] ¶ 2, [72] at 3 ¶ 2. Ignite uses the Z-RO Mark in connection with the sale of its zero calorie performance energy drinks ("Z-RO Energy Drink"). ECF Nos. [51] ¶ 3, [72] at 4 ¶ 3.

The first use in commerce of the Z-RO Mark was in August or September 2020. ECF Nos. [51] ¶ 6, [72] at 4 ¶ 6.[9] Z-RO is pronounced like the word "zero." ECF Nos. [51] ¶ 11, [72] at 5 ¶ 11. The use of the word "ZERO" in the dietary supplement industry and pre-made beverage industry is widespread. ECF Nos. [51] ¶ 7, [72] at 4 ¶ 7. The Z-RO Mark was permitted to be registered only on the Supplemental Register by the U.S. Patent and Trademark Office ("USPTO") because it concluded in a March 6, 2020 Notice of Non-Final Action that "ZERO" is commonly used in the energy drink industry to describe goods that do not contain sugar or calories. ECF Nos. [51] ¶ 8, [72] at 4 ¶ 8.[10]

---

[8] Plaintiffs' Opposition to the SMF, ECF No. [72], includes additional facts. Plaintiffs restart the paragraph numbers for their additional facts, rather than continuing the paragraph numbers. As such, references to Plaintiffs' Opposition to the SMF include a page number and paragraph number for clarity.

[9] Defendants submit that the first use of the Z-RO Mark was August 2020. ECF No. [51] ¶ 6. Plaintiffs submit that the first use of the Z-RO Mark was September 2020. ECF No. [72] at 4 ¶ 6. However, the difference is immaterial because, whichever date is considered the date of first use, the record establishes that the date of first use of the SRO trademark was February 1, 2010, which predates the first use of the Z-RO Mark. ECF No. [1-5].

[10] Plaintiffs note that Ignite sought to put the Z-RO Mark on the Supplemental Register. *See* ECF No. [72] at 4 ¶ 8. Plaintiffs also note that Ignite International expressly disagreed with the USPTO's reasoning. *See id.*

Plaintiffs contend that Ignite selected the Z-RO Mark based upon the knowledge of a former employee of VPX, James Gracely. ECF Nos. [51] ¶ 56, [72] at 9 ¶ 56. The parties dispute as to whether Gracely was involved in the selecting of the Z-RO Mark. ECF Nos. [51] ¶ 58, [72] at 9 ¶ 58.

The Z-RO Energy Drink is sold online on Ignite's website, through e-retailers such as Amazon, and through smaller distributors. ECF Nos. [51] ¶ 14, [72] at 5 ¶ 14. It has also been sold at Publix, nutritional stores, such as Vitamin Shoppe, and gas and convenience stores. ECF Nos. [51] ¶ 14, [72] at 5 ¶ 14. Ignite is a social media-driven company that markets the Z-RO Energy Drink on various social media platforms, but primarily through Instagram. ECF Nos. [51] ¶ 17, [72] at 5 ¶ 17. The Ignite International Instagram account states that it is intended for people over the age of 21. ECF Nos. [51] ¶ 19, [72] at 5 ¶ 19. The Z-RO Energy Drink was also featured on an Instagram page entitled  Ignite ZRO, with the descriptor "+18[.]" ECF Nos. [51] ¶ 20, [72] at 5-6 ¶ 20.[11]

The Z-RO Energy Drink is sold by Ignite for $2.99 per can. ECF Nos. [51] ¶ 13, [72] at 5 ¶ 13. Ignite spent $41,184.26 on all of its marketing of the Z-RO Energy Drink in 2020 and 2021. ECF Nos. [51] ¶ 23, [72] at 6 ¶ 23. Plaintiffs' expert states that Ignite generated revenue from sales of Z-RO Energy Drink totaling $950,964.00. ECF Nos. [51] ¶ 24, [72] at 6 ¶ 24.

### B.  The SRO Mark

Pursuant to a Nunc Pro Tunc Assignment of Trademarks from VPX to JHO effective as of July 31, 2017, JHO owns the SRO trademark ("SRO Mark"), including the mark recited in United

---

[11] Defendants contend that the Instagram account is restricted to individuals over the age of 18. ECF No. [51] ¶ 20. Plaintiffs contend that the Instagram account merely has the descriptor "18+" and that the Instagram account is not restricted to individuals over the age of 18. [72] at 5-6 ¶ 20. A review of the Instagram page indicates that the account is not restricted to individuals over the age of 18 but merely has the descriptor "18+[.]" *See* ECF No. [51-1] at 128.

States Trademark Registration No. 4,536,197 ("SRO Registration"). ECF Nos. [51] ¶ 30, [72] at 7 ¶ 30. The SRO Registration is for goods in Class 1 for active chemical ingredients for use in the manufacture of pharmaceuticals for treating weight loss. ECF Nos. [51] ¶ 32, [72] at 7 ¶ 32. The SRO Mark is used only on a whey protein powder ("SRO Product") sold by VPX. ECF Nos. [51] ¶ 33, [72] at 7 ¶ 33. The SRO Product is used for weight gain, weight loss, muscle management, and weight management. ECF Nos. [51] ¶ 43, [72] at 8 ¶ 43. The SRO Product must be mixed by the consumer with a liquid in order to be consumed. ECF Nos. [51] ¶ 44, [72] at 8 ¶ 44. VPX considers the SRO Product to be a dietary supplement. ECF Nos. [51] ¶ 34, [72] at 8 ¶ 34.[12] Dietary supplements are in International Class 5, not Class 1. ECF Nos. [51] ¶ 35, [72] at 8 ¶ 35. Energy Drinks are in International Class 32, not Class 5 or Class 1. ECF Nos. [51] ¶ 36, [72] at 8 ¶ 36. VPX owns trademark registrations in both International Class 5 and International Class 32, but none are for the SRO Mark. ECF Nos. [51] ¶ 37, [72] at 8 ¶ 37.

The SRO Product label includes "Zero Carb" on it. ECF Nos. [51] ¶ 41, [72] at 8 ¶ 41. SRO is pronounced as three independent letters, S-R-O. ECF Nos. [51] ¶ 48, [72] at ¶ 48. Plaintiffs state the SRO Mark was selected because of its audible similarities between SRO and "zero" and to emphasize the zero carb aspect of the product. ECF Nos. [51] ¶ 47, [72] at 9 ¶ 47.

The SRO Product is sold through the following outlets: Amazon, Vitamin Shoppe, NetNutri, MySupplement Store, Supplement Warehouse, VPX's website, and through distributors, such as Europa, New York Barbell, DNA, DNY, online retailers, and nutritional supplement stores, such as GNC. ECF Nos. [51] ¶ 50, [72] at 9 ¶ 50. The SRO Product is marketed to "the general consuming public," including children and individuals who are health conscious and pursuing an active lifestyle. ECF Nos. [51] ¶ 51, [72] at 9 ¶ 51. The VPX Instagram accounts featuring the

---

[12] Plaintiffs do not dispute that they consider the SRO Product to be a dietary supplement, but Plaintiffs note that they do not consider the SRO Product to be *only* a dietary supplement. *See* ECF No. [72] at 8 ¶ 34.

SRO Product do not state that they are restricted for people 21 and over. ECF Nos. [51] ¶ 53, [72] at 9 ¶ 53.

As of February 2022, VPX offered for sale on its BangEnergy.com website the SRO Product for $69.99 per tub. ECF Nos. [51] ¶ 49, [72] at 9 ¶ 49. Plaintiffs spent $184,248.00 on just trade shows to market the SRO Product in 2018 and 2019. ECF Nos. [51] ¶ 54, [72] at 9 ¶ 54. Vitamin Shoppe, a professional buyer that had previously purchased VPX's SRO from Gracely, e-mailed Gracely's VPX e-mail account in a discussion about whether Vitamin Shoppe would purchase Z-RO from Gracely. ECF Nos. [72] at 13 ¶ 50, [87] ¶ 50.[13]

## III.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*,

---

[13] Defendants note that the e-mail does not mention the word "Z-RO," but Defendants do not meaningfully dispute that Vitamin Shoppe sought to purchase the Z-RO Energy Drink by sending an e-mail to Gracely's VPX e-mail address. ECF No. [87] ¶ 50. Further, VPX Vice President Andrew Wisdom's testimony indicates that the e-mail was for the purchase of the Z-RO Energy Drink, even if the word "Z-RO" was not expressly mentioned. ECF No. [51-7] at 87. Defendants also dispute Plaintiffs' supposed reference to Vitamin Shoppe as a "vendor," but Plaintiffs do not describe Vitamin Shoppe as a "vendor." *See* ECF Nos. [72] at 13 ¶ 50, [87] ¶ 50.

934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244,

1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker*

*v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version

of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-

movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's]

position will be insufficient; there must be evidence on which a jury could reasonably find for the

[non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed

from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material

fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort*

*Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence.

*See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n,*

*Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine

issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies

this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical

doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, *LLC*, 327 F. App'x 819, 825 (11th Cir.

2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Instead, "the non-moving party 'must make a sufficient showing on each essential element of the

case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by

its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating

specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*,

549 F.3d at 1343. Yet, even where a non-moving party neglects to submit any alleged material

facts in dispute, a court must still be satisfied that the evidence in the record supports the

uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

## IV.   DISCUSSION

Defendants argue that they are entitled to summary judgment in their favor on Plaintiffs' trademark infringement and cancellation claims and on Defendants' counterclaims because (1) there is no likelihood of confusion; (2) Plaintiffs fail to demonstrate the priority of the SRO Mark; and (3) VPX does not have standing to sue because it assigned all its rights in the SRO Mark to JHO. *See generally* ECF No. [52].

### A.   Standing

Although Defendants challenge VPX's standing as their third and final argument, the Court notes that "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Dillard v. Baldwin County Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *Florida Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999); and *EF Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). As such, the Court first addresses Defendants' standing argument.

Defendants argue that VPX assigned all of its rights in the SRO Mark to JHO, and as a result, VPX does not have standing to sue Defendants. *See* ECF No. [52] at 20.[14] Plaintiffs respond that JHO and VPX had an oral license agreement that granted VPX the right to use JHO's trademarks in commerce and permitted VPX to enforce any trademark rights. *See* ECF No. [71] at 15-16. Plaintiffs note that VPX and JHO reduced the oral agreement into writing in September 2021. *See id.* at 15. Defendants reply that Plaintiffs have provided no documentation evidencing the existence of an oral agreement. *See* ECF No. [88] at 10. Defendants also argue that when Defendants asked Plaintiffs why Plaintiffs executed a written agreement after the commencement of the lawsuit, Plaintiffs invoked privilege. *See id.* Further, Defendants note that JHO previously disclaimed the existence of an oral agreement by stating that "JHO does not have any unwritten license agreements concerning the use of the SRO Mark." ECF No. [53-9] at 3.

The Court agrees with Plaintiffs. First, as Plaintiffs correctly point out "[o]ral agreements conveying trademark licensing rights are legally permissible." *Sony Comput. Ent. Am., Inc. v. NASA Elecs. Corp.*, No. 07-20819-CIV, 2008 WL 11333475, at *6 (S.D. Fla. Feb. 7, 2008). In this case, Plaintiffs set forth evidence, in the form of an affidavit from the General Counsel for VPX, Francis Massabki, stating that JHO and VPX operated under an oral license agreement that allowed VPX "to enforce the trademarks that it was using." ECF No. [69-16] ¶¶ 6-7. As such, Defendants' argument that Plaintiffs set forth no evidence regarding the existence of an oral license agreement is unpersuasive.

Further, to the extent that Defendants argue that there is no additional documentation evidencing the existence of an oral agreement, the Court notes that the lack of documentation is the very definition of an oral agreement. Plaintiffs cannot be faulted for failing to produce written

---

[14] Defendants note that they are only challenging VPX's standing to sue for infringement claims, not other claims, for which Defendants concede VPX does have standing. *See* ECF No. [88] at 10 n.2.

documentation of an unwritten agreement. Lastly, although Defendants cite JHO's response to an interrogatory stating that "JHO does not have any unwritten license agreements concerning the use of the SRO Mark," ECF No. [53-9] at 3, the Court notes that JHO's response was served on March 4, 2022, months after the execution of the written licensing agreement in September 2021. Thus, JHO's March 4, 2022 response could be reasonably interpreted to mean that there were no unwritten license agreements as of March 4, 2022.[15]

In sum, Plaintiffs present sufficient evidence to raise an issue of material fact as to whether there was an oral license agreement that allowed VPX to enforce trademark rights. Defendants fail to carry their burden of showing that there is no genuine dispute as to whether VPX had the right to enforce the trademarks under the oral license agreement. As such, Defendants' Motion is denied as to this matter.

### B.  Prior Rights

The Court now turns to Defendants' argument regarding prior rights.[16] Defendants argue that Plaintiffs never used the SRO Mark for goods recited in the SRO Registration. *See* ECF No. [52] at 17. The SRO Registration is for "[a]ctive chemical ingredients used in the manufacturing of pharmaceuticals" in Class 1. *Id.* (citing ECF No. [51] ¶ 32). However, the SRO Product is a whey protein powder that is mixed with liquid to create a protein beverage. As such, Defendants

---

[15] Defendants' reliance on *MSPA Claims 1, LLC v. Scottsdale Ins. Co.*, 352 F. Supp. 3d 1234, 1240 (S.D. Fla. 2018), and *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F. 3d 1379, 1384 (Fed. Cir. 2015), are unavailing. Both cases involve retroactive assignments after the start of the lawsuits. In this case, there was an oral agreement already in place at the time of the lawsuit, rather than a retroactive license executed after the lawsuit was filed. Similarly, Defendants' reliance on *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 264 F. Supp. 3d 1294, 1299 (M.D. Fla. 2017), is unavailing. In *Kroma*, the licensing agreement did not confer the right to enforce the trademarks. *See id.* at 1300. In this case, Plaintiffs have presented evidence of an oral agreement that did confer the right to enforce the SRO Mark.

[16] Although Defendants argue that there is no likelihood of confusion before arguing that Plaintiffs failed to establish prior rights, the Court notes that without prior rights, any argument regarding the likelihood of confusion is moot. As such, the Court addresses Defendants' arguments regarding prior rights before turning to the likelihood of confusion.

argue that the SRO Mark was never used as registered, and the SRO Registration should be considered abandoned as a matter of law. *See id.* Defendants also argue that the SRO Registration was obtained by fraud. *See id.* at 18-19. According to Defendants, Plaintiffs knew that the SRO Product was not a Class 1 chemical ingredient used in the manufacture of pharmaceuticals because the USPTO previously rejected Plaintiffs' application for another mark in Class 1 and explained that Plaintiffs' application failed to show that the applied-for mark was to be used in the commerce of goods specified in Class 1. *See id.* at 18.

Plaintiffs argue that, irrespective of Defendants' arguments regarding the scope of the SRO Registration under Class 1, the USPTO has twice accepted VPX's specimens as satisfying the description of goods under Class 1. *See* ECF No. [71] at 14. Plaintiffs further submit that multiple witnesses have testified that the whey protein in the SRO Product is chemical that is not naturally-occurring, and that the whey protein is used as an ingredient for making protein shakes. *See id.* at 15-16. Therefore, Plaintiffs submit that there is a factual dispute as to whether the SRO Product is an active chemical ingredient used in the manufacturing of pharmaceuticals. *See id.* at 15. In addition, Plaintiffs argue that a reasonable juror could conclude that VPX's filing with the USPTO was not fraudulent. *See id.* at 11-14. Plaintiffs stress that Defendants' attempt to misrepresent Plaintiffs' previous application for trademark registration does not establish Plaintiffs' intent to defraud the USPTO. *See id.* at 13. Plaintiffs explain that there was an intervening change in counsel between the failed application and the successful prosecution of the SRO Mark. *See id.* Further, Gideon Eckhouse ("Eckhouse"), VPX's Chief IP Counsel who successfully prosecuted the SRO Mark, testified that he performed a reasonable inquiry before applying for the SRO Mark. *See* ECF No. [51-10] at 55. As such, Plaintiffs maintain that there is a genuine dispute as to whether Plaintiffs intended to defraud the USPTO that precludes summary judgment. *See id.* at 14.

The Court agrees with Plaintiffs. First, a review of the record indicates that Plaintiffs have set forth evidence that the USPTO determined that the SRO Product satisfied the description of goods under the SRO Registration and the SRO Registration would remain in effect. *See* ECF No. [69-4] at 2. Based on the USPTO's approval, a reasonable jury could find that Plaintiffs' use of the SRO Mark was in accord with the SRO Registration and that Defendants did not abandon the SRO Registration. As such, Defendants fail to carry their burden of establishing that there is no genuine issue of material fact as to Plaintiffs' alleged misuse or nonuse of the SRO Mark.

Next, the Court is not persuaded that exists no genuine issue of material fact as to Plaintiffs' alleged fraud. As Plaintiffs correctly note, *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009), the party alleging fraud in obtaining or maintaining a trademark registration carries a "heavy burden of proof" requiring "clear and convincing evidence." In carrying this burden, "[t]here is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Id.*; *see also Sovereign Military Hospitaller Ord. of St. John of Jerusalem of Rhodes and of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of St. John of Jerusalem, Knights of Malta, Ecumenical Ord.*, 702 F.3d 1279, 1289 (11th Cir. 2012). Further, the Court notes "[a]s a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (citing *Morissette v. United States*, 342 U.S. 246, 274 (1952); *United States v. Gregory*, 730 F.2d 692, 702 (11th Cir. 1984)).

Plaintiffs set forth sufficient evidence to suggest that there was no subjective intent to defraud the USPTO. Indeed, Eckhouse testified that he performed a reasonable inquiry before applying for the SRO Mark. *See* ECF No. [51-10] at 55. Given the evidence suggesting that Eckhouse may not have been attempting to intentionally defraud the USPTO, a reasonable jury could find that Defendants have failed to carry their heavy burden of proof. Further, in light of the

evidence, the Court sees no reason to depart from the general rule that a party's state of mind, such as the intent to defraud, is a question of fact. As such, Defendants' Motion is denied as to this matter.[17],[18]

### C.  Likelihood of Confusion

The Court now turns to the likelihood of confusion between the two Marks. As Defendants rightly note, to determine if there is a likelihood of confusion, the Court must apply a seven-factor test: (1) strength of Plaintiffs' SRO mark; (2) similarity between the SRO Mark and the Z-RO Mark; (3) similarity between the goods offered under the SRO Mark and the Z-RO Mark; (4) similarity of the actual sales methods used by Plaintiffs and Ignite; (5) similarity of advertising methods; (6) any intent to misappropriate Plaintiffs' goodwill in the SRO Mark; and (7) the existence and extent of actual confusion among consumers. *See Tana v. Dantanna's*, 611 F. 3d 767, 775 (11th Cir. 2010).

Further, the Court notes that the Eleventh Circuit has held that "[a]lthough likelihood of confusion is a question of fact, it may be decided as a matter of law. *See id.* at 775, n.7 (citing *Welding Servs., Inc. v. Forman,* 509 F.3d 1351, 1361 (11th Cir. 2007); *Alliance Metals, Inc. v. Hinely Indus., Inc.,* 222 F.3d 895, 907 (11th Cir. 2000)). The Eleventh Circuit has routinely

---

[17] To the extent that Defendants briefly argue in the Reply that even if "the court finds neither abandonment nor fraud, then the registration still fails as proof of prior rights with respect to consumer energy drinks in [C]lass 32, as [the SRO Registration] covers at most chemicals sold to manufacturers," ECF No. [88] at 9, the Court is not persuaded. First, this appears to be an argument that is raised for the first time in the Reply. It is improper to raise an argument for the first time in a reply, thus the Court need not consider such arguments.  *See, e.g., Herring v. Secretary, Dep't of Corrs*., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotations omitted). Second, whether the SRO Registration may constitute proof of prior rights with respect to Defendants' Z-RO Energy Drink is a question of fact for the jury given the conflicting evidence regarding the nature of the products in question.

[18] Because the Court denies Defendants' Motion on this matter, the Court need not address Defendants' arguments regarding Plaintiffs' common law rights. As Defendants rightly concede, the arguments are relevant only if the Court finds that there is no valid federal registration of the SRO Mark. *See* ECF No. [52] at 19.

affirmed district courts that have "weighed" the likelihood-of-confusion factors on summary judgment. *See, e.g., Welding Servs.,* 509 F.3d at 1361 (explaining that "[o]verwhelming visual dissimilarity can defeat an infringement claim, even where the other six factors all *weigh* in favor of the plaintiff" and concluding that "[t]he next three factors *weigh* in favor of Welding Services" (emphasis added)); *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC,* 369 F.3d 1197, 1208 & n.12 (11th Cir. 2004) (holding that no reasonable jury could find that the two logos are confusingly similar because although "the second factor *weighs* in favor of FBD," "the remaining six factors all *weigh* in favor of DDI," and "the lack of visual similarity between the two designs is overwhelming" (emphasis added)). As such, the Court addresses whether Defendants have satisfied their burden of demonstrating that there is no genuine issue of fact regarding each of the seven factors and weighs each factor to see if the Court can determine the likelihood of confusion as a matter of law.

### i. Strength of the SRO Mark

Defendants argue that the SRO Mark is at most descriptive and Plaintiffs must therefore prove that the SRO Mark has also acquired secondary meaning for trademark protection. *See* ECF No. [52] at 7-9. Defendants contend that Plaintiffs cannot prove the existence of a secondary meaning. According to Defendants, SRO stands for spirofuse reverse osmosis, which is the process used to manufacture the SRO Product. *See id.* at 7. Further, other companies in the dietary supplement industry and the pre-made beverage industry commonly use the word "zero," and extensive third-party use of the meaning zero undermines any claim that the SRO Mark has the secondary meaning of zero. *See id.* at 8.

Plaintiffs respond by first acknowledging that "[t]here are four recognized types of mark, ranging from weakest to strongest: generic, descriptive, suggestive and arbitrary." *See* ECF No. [71] at 17 (quoting *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605

F.3d 931, 938 (11th Cir. 2010)). "An arbitrary or fanciful mark bears no logical relationship to the product or service it is used to represent [e.g., Kodak]. A suggestive mark refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product [e.g., Penguin Refrigerators]. A descriptive mark identifies a characteristic or quality of the service or product [e.g., Vision Center]." *Caliber*, 605 F.3d at 938 (alterations in original). Plaintiffs emphasize that they removed any references to sporifuse reverse osmosis from their labels years ago. Therefore, according to Plaintiffs, SRO is nothing more than an arbitrary arrangement of letters for the average customer, indicating that SRO is the strongest type of mark. *See* ECF No. [71] at 17-18.

The Court agrees with Plaintiffs. Plaintiffs have set forth evidence that they removed any references to spirofuse reverse osmosis in 2017. *See* ECF No. [69-15] ¶ 22. Because the Court must view the removal of the references in the light most favorable to Plaintiffs and draw all reasonable inferences in favor of Plaintiffs, the Court recognizes that the average customer may perceive SRO to be nothing more than an arbitrary arrangement of letters, thus indicating a strong mark. In other words, there is a genuine issue of material fact as to whether the SRO Mark could be considered arbitrary, and as a result, the strength of the SRO Mark cannot be determined at this stage of the proceedings. As such, the Court cannot find that the first factor weighs in Defendants' favor.[19]

---

[19] Defendants' reliance on *Florida Van Rentals, Inc. v. Auto Mobility Sales, Inc*., 85 F. Supp. 3d 1300, 1303 (M.D. Fla. 2015), is unpersuasive. In that case, the court found "no genuine dispute of material fact that [the] marks are descriptive and lack secondary meaning, and thus are not entitled to any trademark protection." As noted above, Plaintiffs in this case have set forth the necessary evidence to raise a genuine dispute of material fact that the SRO Mark is not descriptive and that the SRO Mark may be entitled to trademark protection.

### ii. Similarity of the Marks

Defendants argue that the SRO Mark and the Z-RO Mark are not similar. *See* ECF No. [52] at 9-11. Defendants argue that the difference is apparent both textually and in the way that the Marks are pronounced. Defendants rely on *Fla. Int'l Univ. Bd. Of Trustees v. Fla. Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1277 (S.D. Fla. 2015), where the court determined the one-letter difference in FIU and FNU were not sufficient to confer trademark protection. Further, Z-RO is pronounced like the word "zero." ECF Nos. [51] ¶ 11, [72] at 5 ¶ 11. SRO is pronounced as three independent letters, S-R-O. ECF Nos. [51] ¶ 48, [72] at ¶ 48. Defendants also argue that the two Marks are presented in the marketplace differently, with the Ignite logo accompanying the Z-RO Mark. *See id.* at 10-11. Plaintiffs respond that the letter "S" and the letter "Z" are visually similar, making confusion likely. *See* ECF No. [71] at 19-20. Plaintiffs further argue that the placement of the Ignite logo is inapposite because when the public speaks about the products, the logo has no meaningful role in the discussion. *See id.* at 20.

The Court agrees with Plaintiffs. There is a genuine factual dispute as to the similarity of the Marks because a reasonable jury could find that the Marks are similar given the relatively minor visual difference between the letter "S" and the letter "Z." Further, Defendants' reliance on *Fla. Int'l Univ. Bd. Of Trustees*, 91 F. Supp. 3d at 1277, is unpersuasive because the court in that case expressly determined that FIU and FNU are two marks in a crowded field of university acronyms that confer less trademark protection. *See id.* That case is not instructive in determining whether the one-letter difference between SRO and Z-RO creates a meaningful difference in the context of beverages and powders. As such, the Court cannot find that the second factor weighs in Defendants' favor.

### iii.   Similarity of the Goods Offered Under the Marks

Defendants next argue the public will not attribute the parties' respective products to a single source. *See* ECF No. [52] at 11-13. Defendants note that the Z-RO Energy Drink contains caffeine, is sold in liquid form, and is not intended to help build muscle, but the SRO Product contains no caffeine, is sold in powder form, and is intended to help build muscle. *See id.* at 12. Further, Defendants stress that the products are sold at different price points – $69.99 per tub for the SRO Product compared to $2.99 per can for the Z-RO Energy Drink. *See id.* at 13. Defendants aver that registrations of the two Marks are also different. *See id.* at 12. The Z-RO Registration is for Class 32 energy drinks, and the SRO Registration is for Class 1 chemicals used in the manufacture of pharmaceuticals. *See id.*

Plaintiffs respond that the parties both market their products as "having better-for-you attributes such as no sugar and no carbs." ECF No. [71] at 21. Further, other companies in the beverage industry sell their products in multiple formats, including ready-to-drink beverages, powders, and gels. *See id.* As such, the public may reasonably believe that the same company offers both the SRO Product and the Z-RO Energy Drink as two formats of the same product. *See id.* According to Plaintiffs, this concern is exacerbated by the fact that VPX offers multiple formats of its products. *See id.*

The Court again agrees with Plaintiffs. It is undisputed that the parties both market their products as a zero carb or zero net carb product and that at least one other company in the industry offers multiple formats of its product. *See* ECF Nos. [72] at 14 ¶¶ 38-39, [87] ¶¶ 38-39. As such, a jury could reasonably find that the public will attribute the parties' zero carb products to a single company much like other companies that offer multiple formats of the same product. Although Defendants present some evidence that the public will not attribute the products to a single

company, the Court once again cannot find that the third factor weighs in Defendants' favor given the inference the jury may reasonably draw from the undisputed facts.

### iv.   Similarity of the Sales Methods

Defendants argue that the parties' sales channels and customers are sufficiently dissimilar. *See* ECF No. [52] at 13-15. Defendants argue that the Z-RO Energy Drink is targeted towards young adults over the age of majority, but the SRO Product is marketed to consumers of all ages, including children. *See id.* at 14. Defendants also submit that the sales channels are sufficiently different. *See id.* Although both products are sold online, there is only minimal overlap created by the few major online outlets that sell a wide variety of products. *See id.* at 14-15. Further, the products are not sold in close proximity to each other. *See id.* at 15. Plaintiffs respond that VPX and Ignite use many of the same outlets. *See* ECF No. [71] at 22. Plaintiffs note that both parties have sold their respective products through Europa Sports Partners, Vitamin Shoppe, and Amazon. *See id.*

The Court agrees with Plaintiffs. Simply put, it is undisputed that some major outlets carry both parties' products. *See* ECF Nos. [72] at 15 ¶¶ 42-43, [87] ¶¶ 42-43. As such, a reasonable jury could find that the channels through which the products are sold are sufficiently similar. The Court cannot find that the fourth factor weighs in Defendants' favor.

### v.   Similarity of the Advertising Methods

Defendants argue that the parties' advertising methods are dissimilar. *See* ECF No. [52] at 15-16. Defendants submit that the parties' products are marketed on their respective websites and social media accounts. *See id.* Defendants argue the parties' respective use of their own websites and social media accounts for advertising dispels any confusion that the parties are related entities. *See id.* at 15 (citing *Tana*, 611 F.3d at 778). Defendants also maintain that the Ignite logo always

accompanies their advertisements. *See id.* Lastly, Defendants note that there is a wide discrepancy in advertising expenditure, which indicates dissimilar advertising methods. *See id.* at 16.

Plaintiffs respond that both parties use the same social media platforms, namely Instagram, Facebook, and Twitter. *See* ECF No. [71] at 23. Plaintiffs further note that many social media users review feeds that compile the postings of various profiles, thus reading posts from the respective parties one after the other, rather than visiting individual profiles of the respective parties. *See id.* Plaintiffs also emphasize that at one point, the parties considered having Ignite's CEO and social media influencer Dan Bilzerian promote VPX products, indicating a substantial overlap between the parties' advertising base. *See id.* As such, Plaintiffs argue that there is a significant likelihood of confusion from the parties' use of the same advertising platforms.

Again, the Court agrees with Plaintiffs. It is undisputed that both parties use major social media platforms to market their products. *See* ECF Nos. [72] at 15 ¶ 44, [87] ¶ 44. As such, a jury could reasonably find that the advertising methods are sufficiently similar after considering both parties' use of the same social media platforms. Further, Defendants' reliance on *Tana*, 611 F.3d at 778, is unavailing because in that case the parties were using their respective websites to advertise their products, not major social media platforms that provide a compilation of both parties' advertisements in a single feed. As such, the Court cannot find that the fifth factor weighs in Defendants' favor.

### vi.   Intent to Misappropriate Goodwill in the SRO Mark

Defendants argue that Plaintiffs fail to set forth evidence of Defendants' intent to misappropriate the goodwill of the SRO Mark. *See* ECF No. [52] at 16. Defendants aver that Plaintiffs' theory that Defendants selected the Z-RO Mark based on the knowledge of VPX's former employee Gracely is false. *See id.* Instead, Defendants argue that the Z-RO Mark was based on the work of One Elite Sports, LLC, with whom Defendants entered into a contract to develop

an energy drink. *See id.* Plaintiffs respond that Ignite hired Gracely in July 2019, before Ignite selected its name for its energy drink. *See* ECF No. [71] at 23. Plaintiffs also note that Gracely gave an interview regarding the Z-RO Energy Drink where Gracely spoke about using the information he learned at VPX to develop and promote the Z-RO Energy Drink. *See id.* at 24.

The Court agrees with Plaintiffs. The Court reiterates that "[a]s a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Chanel*, 931 F.2d at 1476 (citing *Morissette*, 342 U.S. at 274; *Gregory*, 730 F.2d at 702). In this case, Plaintiffs have set forth evidence of Gracely's alleged involvement. *See* ECF No. [71] at 24. As such, there is a genuine factual dispute as to Defendants' intent to misappropriate SRO's goodwill given the extent of Gracely's alleged involvement in the development and promotion of the Z-RO Energy Drink after leaving VPX. *See* ECF Nos. [72] at 15, ¶ 46, [87] ¶ 46. As such, the Court cannot find that the sixth factor weighs in Defendants' favor.[20]

### vii.  Actual Confusion

Finally, Defendants argue that there is not a single instance of actual confusion involving a customer. *See* ECF No. [52] at 16. Defendants submit that the only known instance of confusion occurred when a vendor, not a potential customer, was confused about an e-mail address, not the products in question. *See id.* at 16-17. Plaintiffs respond that the incident Defendants reference was when a professional buyer, Vitamin Shoppe, e-mailed Gracely's former VPX e-mail address to see whether Vitamin Shoppe could purchase Z-RO from Gracely. *See* ECF No. [71] at 24.

---

[20] Defendants rely on *Unleashed Magazine, Inc. v. Orange County, Fla.*, No. 06-cv-1690-Orl-28GJK, 2008 WL 11336608, *7 (M.D. Fla. Oct. 2, 2008). In that case, the plaintiff was only able to put forth evidence of the defendant's knowledge of the use of the mark in question. *See id.* at *8. As such, the court determined that there was no evidence that the defendant acted in bad faith or with the intent to benefit from the plaintiff's reputation. *See id.* In contrast, as noted above, Plaintiffs set forth sufficient evidence of Gracely's alleged involvement in developing and promoting Z-RO, not merely his knowledge of the SRO Mark, indicating Defendants' possible intent to misappropriate the goodwill of the SRO Mark.

Plaintiffs argue that Vitamin Shoppe's e-mail was not confusion about e-mail addresses but an example of actual confusion from a professional buyer. *See id.*

The Court agrees with Plaintiffs. The Court must view the facts in the light most favorable to Plaintiffs and draw all reasonable inferences in favor of Plaintiffs. When viewing VPX Vice President Andrew Wisdom's testimony regarding Vitamin Shoppe's e-mail in this light, *see* ECF No. [51-7] at 87, it is evident that Plaintiffs have presented the existence of at least one e-mail that a reasonable jury could consider to be actual confusion from a potential customer. As such, the Court cannot find that the seventh factor weighs in Defendants' favor.

In sum, Defendants fail to demonstrate that there is no genuine issue of material fact as to any of the seven factors on the likelihood of confusion. As such, the Court cannot find that any factor weighs in favor of Defendants as a matter of law, and Defendants are not entitled to summary judgment on the likelihood of confusion.

### D. Counterclaims

Defendants argue that they are entitled to summary judgment on their Counterclaims for the same arguments addressed above. *See* ECF No. [52] at 20. For the reasons stated above, the Court is not persuaded. As such, Defendants' Motion is denied as to this matter.

### E. Hearing

Defendants request a hearing on the Motion because it will assist the Court in its consideration of the arguments. *See* ECF No. [52] at 3. The Court has examined the record and the parties' respective arguments and finds that a hearing is not necessary to resolve the issues presented. As such, the Court denies Defendants' request for a hearing.

### V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [54]**, is **DENIED**.

2.  Defendants' Sealed Motion, **ECF No. [52]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 9, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record