## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-60451-BLOOM/Valle

JHO INTELLECTUAL PROPERTY
HOLDINGS, LLC and VITAL
PHARMACEUTICALS, INC.,

      Plaintiffs,

v.

IGNITE INTERNATIONAL, LTD.,
IGNITE BEVERAGES, INC.,
and JAMES GRACELY,

      Defendants.

_____/

### OMNIBUS ORDER ON *DAUBERT* MOTIONS

      **THIS CAUSE** is before the Court upon Plaintiffs JHO Intellectual Property Holdings, LLC

("JHO") and Vital Pharmaceuticals, Inc.'s ("VPX") (collectively, "Plaintiffs") Motion and

Incorporated Brief in Support of Their Motion to Exclude the Expert Testimony of Dr. John L.

Stanton, Jr., ECF No. [60] ("Plaintiffs' Motion")[1] and Defendants Ignite International, Ltd. and

Ignite Beverages, Inc. (collectively, "Ignite" or "Defendants")[2] *Daubert* Motion and Incorporated

Memorandum of Law to Limit the Opinions and Testimony of Jon Tepp, ECF No. [63]

("Defendants' Motion").[3] With respect to Plaintiffs' Motion, Defendants filed a Response, ECF

No. [74] ("Defendants' Response"), to which Plaintiffs filed a Reply, ECF No. [85] ("Plaintiffs'

Reply").[4] With respect to Defendants' Motion, Plaintiffs filed a Response, ECF No. [75]

---

[1] Plaintiffs filed an unredacted version of their Motion under seal, ECF Nos. [61], [61-1].
[2] The terms "Defendants" and "Ignite" do not refer to Defendant James Gracely who did not join Defendants' Motion or any of the relevant pleadings.
[3] Defendants filed an unredacted version of their Motion under seal, ECF No. [62].
[4] Plaintiffs filed an unredacted version of their Reply under seal, ECF No. [86].

("Plaintiffs' Response"),[5] to which Defendants filed a Reply, ECF No. [92] ("Defendants' Reply").[6] The Court has carefully reviewed the Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Plaintiffs' Motion is granted in part and denied in part consistent with this Order, and Defendants' Motion is denied.

## I. BACKGROUND

On February 26, 2021, Plaintiffs initiated this lawsuit against Ignite and James Gracely ("Gracely"). *See generally* ECF No. [1]. Plaintiffs assert the following six counts: Count I – trademark infringement in violation of the Lanham Act § 32(1) against Ignite; Count II – trademark infringement in violation of the Lanham Act § 43(a) against Ignite; Count III – cancellation of trademark registration pursuant to Lanham Act §§ 24, 37 against Ignite International, Ltd.; Count IV – common law unfair competition against Ignite; Count V – breach of contract against Gracely; and Count VI – tortious interference with a contract against Ignite. *See generally id.*

Defendants assert two counterclaims: Counterclaim I – cancellation of U.S. Trademark Reg. No. 4,536,197 against JHO; and Counterclaim II – declaratory judgment of non-infringement against Plaintiffs. *See generally* ECF No. [12]. On April 9, 2021, the Court granted the parties' Joint Motion to Stay Counts V and VI of the Complaint Pending Mediation and Arbitration, ECF No. [19], and directed the parties to mediation and, if necessary, arbitration of Counts V and VI. *See* ECF No. [20].

In Plaintiffs' Motion, Plaintiffs request that the Court exclude Defendants' expert Dr. John L. Stanton, Jr. ("Dr. Stanton"). *See generally* ECF No. [61-1]. In Defendants' Motion, Defendants request that the Court limit the opinions and testimony of Plaintiffs' expert Mr. Jon Tepp ("Mr. Tepp"). *See generally* ECF No. [62]. The Court considers each Motion in turn.

---

[5] Plaintiffs filed an unredacted version of their Response under seal, ECF No. [76].
[6] Defendants filed an unredacted version of their Reply under seal, ECF No. [91].

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the court must engage in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

As for the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *See id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not

admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[7]

Next, when determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *See id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive, and a court may need to conduct an alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *See d.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *See id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *See id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *See Rink*, 400 F.3d at 1293 n.7.

On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321,

1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## III.   DISCUSSION

### A.  Plaintiffs' Motion

Defendants retained Dr. Stanton as an expert witness to offer his opinion on whether consumers will associate the Z-RO energy drink sold by Defendants with the whey protein powder sold by VPX. *See* ECF No. [61-3] at 3. Dr. Stanton's opinion is that "there would be no confusion in the minds of consumers as to the differing sources of the products at issue." *Id.* at 5. Plaintiffs challenge the reliability and helpfulness of Dr. Stanton's opinions. *See* ECF No. [61-1]. The Court considers each argument in turn.[8]

### a.  Reliability

Plaintiffs' overarching argument is that Dr. Stanton did not use a reliable methodology to form his opinions. *See* ECF No. [61-1] at 7-13. Plaintiffs claim that there are recognized approaches to assess the likelihood of confusion, which include consumer surveys, consumer focus groups, analysis of sales data, or analysis of facts disclosed in the case. *See id.* at 8 (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:63 (5th ed. 2017)). Plaintiffs submit that Dr. Stanton did not interview customers, did not study consumer focus groups, did not analyze the demographics of customers, did not analyze whether energy drink manufacturers have extended their brand into other product formats, and did not analyze whether

---

[8] Plaintiffs do not challenge Dr. Stanton's qualifications. Upon a review of Dr. Stanton's resume, ECF No. [61-3] at 16-49, the Court determines that he is qualified to offer his testimony on the opinions in his expert report, except for his opinion on advertising on social media platforms, as discussed in more detail below.

it is common for protein powder manufacturers to also offer a ready-to-drink beverage under the same trademark. *See id.* Plaintiffs then raise four specific challenges.

First, Plaintiffs argue that Dr. Stanton's opinions regarding the similarity of the marks are the result of plain observation. *See id.* at 8-9. Dr. Stanton merely looked at product labels and compared the words on the products. *See id.* at 8. As such, Plaintiffs argue that similar to the expert's opinions in *United Country Real Est., LLC v. United Realty Grp., Inc.*, No. 16-CV-60154, 2017 WL 1293618, at *2 (S.D. Fla. Feb. 28, 2017), Dr. Stanton's opinions on the similarity of the marks should be excluded for lacking "intellectual rigor" and otherwise failing to consider factors typically considered by other experts in the field. *See id.* at 8-9.

Second, Plaintiffs argue that Dr. Stanton's application of the wrong legal standard warrants exclusion of his opinions regarding the similarity of the products. *See* ECF No. [61-1] at 9-11. Plaintiffs contend that the legal analysis for trademark infringement requires consideration of whether the goods are identical and whether they are likely to come from a single source. *See id.* (citing *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1338 (11th Cir. 1999)). Plaintiffs argue Dr. Stanton only considered whether the purchasing public could readily distinguish the SRO and Z-RO products and not whether the purchasing public are likely to believe that the two products come from the same source. *See id.* at 10. Plaintiffs also rely on *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, No. 6:12-CV-33-ORL-28DAB, 2013 WL 12156465, at *12 (M.D. Fla. Jan. 4, 2013), where the court excluded an expert's opinions because the expert applied the wrong legal standard in forming his opinions. *See* ECF No. [61-1] at 11.

Third, Plaintiffs argue that Dr. Stanton's opinions regarding the parties' retail outlets, trade channels, and customers rely on an undisclosed methodology and fail to consider relevant data. *See id.* Plaintiffs argue that "[Dr.] Stanton's methodology for analyzing retailer overlap through Google Maps consisted of placing his finger on a map along the East Coast based on this 'gestalt'

that the parties' products would be offered there.'" *Id.* Plaintiffs contend that, instead of conducting a geographical analysis regarding where the parties' products were sold, Dr. Stanton arbitrarily selected zip codes along the East Coast. *See id.* Plaintiffs emphasize that Dr. Stanton acknowledged that it would not be possible for someone to verify his methodology. *See id.* at 12. Plaintiffs also argue that Dr. Stanton's opinions about whether the parties' products are likely to be displayed near each other are flawed because Dr. Stanton's methodology consisted of walking into a store and looking at sections of the store where he thought the products would be located. *See id.* at 13.

Fourth, Plaintiffs argue that Dr. Stanton's opinions regarding the similarity of the parties' advertising on social media platforms are not based on any reliable methodology or experience in social media. *See id.* Plaintiffs aver that Dr. Stanton's opinions on this matter are flawed in part because Dr. Stanton admitted that his analysis was not "rigorous" and "was more observational." *See id.* (quoting ECF No. [61-4] at 28). Dr. Stanton also admitted that he did not have familiarity with social media. *See id.* (citing ECF No. [61-4] at 29). To the extent that Dr. Stanton relies on his experience in marketing generally, Plaintiffs argue that there is no connection between his methodology and his experience to explain how his experience helped form his opinion on the similarity of the parties' advertising on social media platforms. *See id.*

Defendants do not address Plaintiffs' specific arguments but respond by briefly noting Dr. Stanton's extensive experience. *See* ECF No. [74] at 2 ("Dr. Stanton supports his opinions based on his extensive 40-years of experience in food marketing, including serving as a Professor of Food Marketing and Chairman of the Department of Food Marketing at Saint's Joseph's University since 1985, having a Ph.D. in marketing and quantitative methods, and teaching a variety of food marketing courses, including food strategy, food marketing advertising, and food advertising research."). Defendants cite *McClain v. Metabolife Int'l, Inc.*, 401 F. 3d 1233, 1237 n.1 (11th Cir. 2005), where the Eleventh Circuit held that "experience in a field may offer another

path to expert status." Defendants also note that Dr. Stanton's opinions are based on his review of "the vastly different price points of the products, the completely different packaging of the products, the different places where energy drinks and protein powders are sold, and the potential overlap among consumers for protein drinks versus energy drinks." ECF No. [74] at 2. Lastly, Defendants argue that Plaintiffs' reliance on *United Country,* 2017 WL 1293618, *6-7, is unpersuasive because Plaintiffs overlook a part of this Court's ruling where the Court declined to exclude portions of an expert's opinions that were rooted in the expert's experience. *See* ECF No. [74] at 2-3.[9]

The Court first addresses Plaintiffs' overarching argument that Dr. Stanton did not use recognized approaches to assess the likelihood of confusion and Plaintiffs' reliance on 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:63 (5th ed. 2017)). The cited authority states that there are "*at least* three evidentiary routes to prove a likelihood of confusion" and suggests surveys as one method in a non-exhaustive list of possible methods. *See id.* § 23:63(1) (emphasis added). However, the authority cited does not foreclose other methods to assess the likelihood of confusion. As such, Plaintiffs' cited authority does not support their contention that Dr. Stanton's opinions should be excluded because he did not interview customers, did not study

---

[9] In light of Defendants' relatively brief Response, Plaintiffs reply by arguing that Defendants have failed to meet their burden through their Response. *See* ECF No. [86] at 5 (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1130 (M.D. Fla. 2007)). While the Court recognizes Defendants' failure to meaningfully address Plaintiffs' arguments, the Court also notes that Plaintiffs fail to cite any legal authority establishing that the Court should not look to the record evidence to determine if Defendants have met their burden. Both of Plaintiffs' cited cases do not advance Plaintiffs' argument because the party bearing the burden in each case presented arguments before the court and the court considered the arguments. *See Allison*, 184 F.3d at 1306 ("The court heard three days of evidence and argument from both sides and waded through literally volumes of paper of the documentary record on the science related to breast implants."); *Furmanite*, 506 F. Supp. 2d at 1129 ("In response, Furmanite argues that Mr. O'Rourke used an appropriate methodology and that TDW is inappropriately attempting to use *Daubert* to argue questions relating to the weight and not the admissibility of the proffered evidence."). As such, the Court looks to the record evidence to determine whether Defendants have met their burden of establishing the reliability and helpfulness of Dr. Stanton's opinions.

consumer focus groups, did not analyze the demographics of customers, did not analyze whether energy drink manufacturers have extended their brand into other product formats, and did not analyze whether it is common for protein powder manufacturers to also offer a ready-to-drink beverage under the same trademark. Thus, Plaintiffs' overarching argument and their reliance on *McCarthy on Trademarks and Unfair Competition* § 23:63 are unavailing.

The Court now turns to Plaintiffs' four specific arguments. First, upon a review of Dr. Stanton's expert report and deposition, it is evident that his opinions regarding the similarity of the marks are not based on his observations of the product labels alone but are instead based on sufficiently reliable methodology and reasoning. *See* ECF Nos. [61-3] at 5-6; [61-4]. Dr. Stanton expressly considered several documents in addition to the product labels and applied the Eleventh Circuit's seven factor test for the likelihood of confusion. *See* ECF No. [61-3] at 5-6 ("1. Type of mark[;] 2. Similarity of mark[;] 3. Similarity of the products the marks represent[;] 4. Similarity of the parties' retail outlets (trade channels) and customers[;] 5. Similarity of advertising media[;] 6. Defendant's intent[; and] 7. Actual confusion"); *see also Frehling*, 192 F.3d at 1335. Dr. Stanton's report also indicates that he applied his experience in label research when assessing whether consumers are familiar with the term "zero" on a label. *See id.* at 7. Dr. Stanton compared the products' main benefits, form, container, size, vignette, price/unit, flavors, colors, composition, function, design, and ingredients. *See id.* at 6, 8. Dr. Stanton also reviewed studies on the energy drink market and the sports nutrition product market. *See id.* at 9. As such, Plaintiffs' first argument that Dr. Stanton merely observed the differences in the labels in rendering his opinions on the similarity of the marks is unavailing.

Plaintiffs' second argument that Dr. Stanton applied the wrong legal standard is also unpersuasive. *See* ECF No. [61-1] at 9-11. Plaintiffs contend that Dr. Stanton did not consider whether the products are the kind that the public attributes to a single source, as required by

*Frehling*, 192 F.3d at 1337. However, Dr. Stanton's expert report expressly states that "there would be no confusion in the minds of consumers as to the differing *sources* of the products at issue[.]" *See* ECF No. [61-3] at 5 (emphasis added). Further, as stated earlier, Dr. Stanton's expert report states that his opinions are based "on the structure outlined in *Frehling Enterprises v. Int'l Select Group*," indicating that Dr. Stanton was aware of the correct legal standard as set forth in *Frehling* and ostensibly applied that standard. *See id.* at 6. Plaintiffs' reliance on *Pac. Coast Marine* is similarly unavailing. In *Pac. Coast Marine*, 2013 WL 12156465, at *12, the court excluded an expert's opinion on infringement because the opinion was "based on the 'points of novelty' test of *Litton Systems*, which the Federal Circuit squarely rejected as a separate test in 2008 in *Egyptian Goddess*.'" That case is inapposite here because Dr. Stanton's opinions are purportedly based on the application of the correct legal standard, not a rejected legal standard. *See* ECF No. [61-3] at 5. Finally, to the extent that Plaintiffs argue that Dr. Stanton did not properly apply the correct standard, such an argument goes to the weight and credibility of Dr. Stanton's opinions, and not its admissibility.

Next, the Court is not persuaded by Plaintiffs' third argument that Dr. Stanton's opinions regarding the parties' retail outlets, trade channels, and customers are unreliable because he used an undisclosed methodology and excluded relevant data. *See* ECF No. [61-1] at 11-13. During his deposition, Dr. Stanton testified that based on his experience, he expected the products to appear on the East Coast because he "can match some of the demographics to the -- to the products. You know, more urban people go to gyms than suburban – the rural people." *See* ECF No. [61-4] at 63. Dr. Stanton also used Ignite's website to locate stores where Z-RO beverages were sold. *See id.* at 65. Further, to the extent that Dr. Stanton acknowledges that it would not be possible for someone to verify his methodology or the accuracy of his conclusions, this statement was made in response to a line of questions about how he identified the zip codes and the sample stores to evaluate. *See*

*id.* at 60. The statement does not suggest that it is not possible to recreate the substance of his opinions by following a similar sampling of zip codes and stores. Rather, it merely suggests that the disclosed sampling methodology cannot be replicated "exactly." *Id.* It appears that it is entirely possible for someone to test the substance of his opinions, albeit not precisely. Finally, Plaintiffs' argument that Dr. Stanton relies on anecdotal evidence because he merely walked into a store and looked at sections of the store where he thought the products would be located is not a sufficient reason to exclude his opinions. Dr. Stanton believed that there were no physical stores where both parties' products were available together. *See* ECF No. [61-3] at 13. As such, a more systematic approach when he believed that there was no possible store to take a more systematic approach. To the extent that such a store exists, Plaintiffs can cross-examine Dr. Stanton, and the jury can assess the credibility and weight of Dr. Stanton's opinions on this matter.

Lastly, the Court is persuaded by Plaintiffs' fourth argument regarding Dr. Stanton's opinions on the similarity of advertising media. *See* ECF No. [61-1] at 13. Dr. Stanton's opinions on this matter are based exclusively on advertising on "social media, including Instagram, Facebook and Twitter." *See* ECF No. [61-3] at 15. However, Dr. Stanton failed to examine the primary Instagram account for the Z-RO product in forming his opinions, even though he testified that reviewing the Z-RO product-specific Instagram account would have been relevant. *See* ECF No. [61-4] at 32. When questioned during his deposition regarding his expertise in social media, Dr. Stanton conceded that "we are treading on the very fringes of my knowledge here." *See id.* at 29. Because Dr. Stanton's opinions regarding the similarity of advertising media are based on little to no experience in social media and because Dr. Stanton did not review relevant social media data, the Court determines that Dr. Stanton's opinions on the similarity of advertising media, including advertising on Instagram, Facebook, and Twitter, are unreliable.

In sum, apart from his opinions on the similarity of advertising media, Dr. Stanton's report and deposition testimony demonstrate that Dr. Stanton's methodology is sufficiently reliable. The Court finds that Dr. Stanton's opinions, except his opinions on the similarity of advertising media, are based on reliable methodology.

### a.  Helpfulness

Plaintiffs challenge the helpfulness of Dr. Stanton's opinions regarding (1) the similarity of the marks and products; (2) the similarity of the parties' retail outlets, trade channels, and customers; and (3) the similarity of the parties' advertising media.[10] *See* ECF No. [61-1] at 14-19. Plaintiffs argue that Dr. Stanton's opinions are untethered from the relevant facts and do not concern matters beyond a lay person's understanding. *See id.*

First, regarding Dr. Stanton's opinions regarding the similarity of the marks and products, Plaintiffs reiterate that the opinions are not derived from specialized knowledge or experience, but simply the result of looking at the products and describing them, which the jury is equally capable of doing without an expert opinion. *See* ECF No. [61-1] at 15. Plaintiffs also argue that Dr. Stanton's opinions regarding the importance of the labels are unhelpful because the generalized statements are not tied to the facts of this case. *See id.*

Second, Plaintiffs challenge the helpfulness of Dr. Stanton's opinions on the similarity of the parties' retail outlets, trade channels, and customers because they are untethered from the facts of this case and derived from erroneous data. *See id.* at 16-18. Plaintiffs argue that similar to the expert's opinions in *Atlas IP, LLC v. Medtronic, Inc.*, No. 13-CIV-23309, 2014 WL 5741870, at *6 (S.D. Fla. Oct. 6, 2014), Dr. Stanton's opinions should be excluded because the opinions are

---

[10] Because the Court already determined that Dr. Stanton will not be permitted to offer testimony regarding the similarity of advertising media, including advertising on Instagram, Facebook, and Twitter, Plaintiffs' third argument regarding the same opinions need not be addressed.

derived from generic industry data. *See* ECF No. [61-1] at 16. Plaintiffs stress that Figure 4 of Dr. Stanton's report is not tailored to either party's products and does not identify any channels of trade where the Z-RO product is sold today. *See id.* Plaintiffs argue that Dr. Stanton did not identify supermarkets where the Z-RO product is sold, did not know whether Defendants' customers are more likely to buy the Z-RO product at a supermarket than in any other place, did not review financial data related to where the Z-RO product is sold, did not conduct an independent analysis of the demographics of SRO and Z-RO customers, did not interview anyone at Ignite, did not interview customers, did not know whether Ignite markets the Z-RO product to teenagers, never saw the Z-RO product in a beverage cooler, and did not evaluate Europa – a distributor that sold both products. *See id.* at 16-17.

In their brief Response, Defendants state that "Dr. Stanton based his opinions on his extensive experience in food marketing and his opinions will aid the jury in determining whether these vastly different products could somehow lead consumers to believe that the Z-RO Energy Drink comes from or is associated with Plaintiffs." *See* ECF No. [74] at 2. Defendants contend that Dr. Stanton's testimony related to different aspects of the respective products, such as their packaging and price points, the overlap of consumers of energy drinks and protein drinks, and the consumer's perceptions of the products are all matters that are beyond the understanding of the average lay person. *See id.* at 3.

The Court agrees with Defendants that Dr. Stanton's opinions regarding the similarity of the marks and products are beyond the understanding of the average lay person. As stated earlier, Dr. Stanton did not merely look at the products and describe them, as Plaintiffs alleges. Instead, Dr. Stanton compared the two products' main benefits, form, container, size, vignette, price/unit, flavors, colors, composition, function, design, and ingredients. *See* ECF No. [61-3] at 6, 8. Dr. Stanton also reviewed studies regarding the energy drink market and the average age of consumers

targeted, as well as data on consumers of sports nutrition products. *See id* at 9. Dr. Stanton's opinions, therefore, would help the jury understand the significance of any differences in the marks and products from the perspective of a marketing expert.[11]

Further, to the extent that Plaintiffs argue that Dr. Stanton's opinions rely on generalized industry data and are untethered from the facts of the case, the Court is not persuaded. Plaintiffs' argument that Dr. Stanton used generic data and did not conduct additional product-specific research appears to be a reframing of Plaintiffs' aforementioned argument regarding reliability, which the Court has rejected for the reasons stated above. The Court reiterates that such arguments go to the weight and credibility of Dr. Stanton's opinions, rather than their admissibility. *See Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325 (quoting *Jones*, 861 F.2d at 662). Further, as noted above, Dr. Stanton based his opinions on product-specific data in addition to generic industry data. *See* ECF No. [61-3] at 5-6. Dr. Stanton's partial reliance on generic industry data does not make his opinions unhelpful given his reliance on product-specific data as well. As such, the Court considers Dr. Stanton's opinions to be helpful and adequately tethered to the facts of this case.[12]

In sum, Dr. Stanton will be permitted to offer testimony on the matters set forth in his expert report, except for any matters related to the similarity of advertising media.

---

[11] Plaintiffs' reliance on *Torres v. Carnival Corp.*, No. 12-CV-23370-JLK, 2014 WL 3548456, at *3 (S.D. Fla. July 17, 2014), is unavailing. In that case, the court determined that the expert did not use any specialized knowledge to opine on the adequacy of warning signs, and that the jurors could ascertain for themselves the adequacy of warning signs. *See id.* In this case, however, Dr. Stanton's opinions are not merely an opinion on the differences in the marks or products but whether the differences are material, from the perspective of a marketing expert, in light of studies on varying consumer bases. *See* ECF No. [61-3] at 9. The significance of any dissimilarities in marks and products in the sports nutrition product industry is beyond the understanding of an average lay person.

[12] For similar reasons, the Court notes that Plaintiffs' reliance on *Atlas*, 2014 WL 5741870, at *6, is misplaced. Unlike the instant case, that case involved an expert who did not consider the facts and circumstances of the case and primarily relied on generic industry-wide data.

### B.  Defendants' Motion

The Court now turns to Defendants' Motion. Plaintiffs retained Mr. Tepp as an expert witness to testify about damages. *See* ECF No. [51-6] at 113. Defendants challenge Mr. Tepp's qualifications and the helpfulness of his opinions on the following matters: (1) VPX's sales; (2) VPX's advertising methods; (3) how the SRO product is used; (4) VPX's channels of trade for products not at issue in this case; (5) placement of energy drinks in retailers; (6) VPX's channels to promote the SRO product; (7) Gracely's role at Ignite; (8) Ignite's target audience for the Z-RO product; and (9) the overlap of VPX and Ignite's channels. *See* ECF No. [62] at 4-5.[13]

#### a.  Qualifications

Defendants argue that Mr. Tepp is not qualified to opine on the above topics because they are beyond the scope of his expertise on damages. *See generally* ECF No. [62]. Defendants stress that Mr. Tepp has a bachelor's degree in economics, took one marketing course in college, and has limited experience in the energy drink and supplement industries. *See id.* at 5-6. According to Defendants, Mr. Tepp's expertise is limited to analyzing financial performance and other economic criteria in the context of litigation and that he should not be permitted to offer his opinions on trademark infringement issues in this case. *See id.*

Plaintiffs respond that Mr. Tepp is qualified to testify regarding damages and that the challenged opinions relate to the underlying basis for his damages opinions. *See* ECF No. [76] at 6-8. Plaintiffs note that the challenged opinions are Mr. Tepp's attempt to "identify[] the facts he relied upon in reaching his opinion that establish the requisite nexus between his opinions and the facts of this case." *Id.* at 4. More specifically, Plaintiffs argue that

---

[13] Defendants do not challenge the reliability of Mr. Tepp's challenged testimony. In turn, Plaintiffs respond that Defendants effectively concede that Mr. Tepp's challenged opinions are reliable. *See* ECF No. [76] at 8 (citing ECF No. [62] at 4-6). Upon review of Mr. Tepp's expert report, ECF No. [51-6] at 110-128, the Court agrees that Mr. Tepp's challenged opinions are reliable.

• Tepp's opinions regarding revenue and sales relate to elements of economics and how values of trademarks are assessed.
• Tepp's opinions regarding marketing and advertising mediums relate to the issue of damages and establishing the connection between the circumstances of this case and Tepp's damages analysis.
• Tepp's opinions regarding market segmentation are also grounded in his financial expertise.
• Tepp's opinions regarding channels of trade are similarly financially related and pertinent to the issue of damages and establishing a connection between the circumstances of this case and Tepp's damages analysis.
• Tepp's opinions regarding the identification and characteristics of the accused products and their development is necessary for his financial disgorgement analysis and establishing the requisite connection between his analysis and the circumstances of this case.
• Tepp's opinions regarding channels of distribution, just like his opinions regarding market segmentation and channels of trade, are grounded in his financial expertise.
• Tepp's opinions regarding financial forecasts are grounded in his financial expertise.

*Id.* at 7 (citations omitted).

The Court agrees with Plaintiffs. As an initial matter, the Court determines that Mr. Tepp is qualified to opine on damages given his expertise in analyzing financial data and his degree in economics. *See* ECF No. [51-6] at 112.[14] Next, as Plaintiffs correctly note, "[f]or damages expert testimony, there must be 'some nexus between the infringing activity and the gross revenue figure proffered by a plaintiff.'" ECF No. [76] at 9 (quoting *Ordonez-Dawes v. Turnkey Properties, Inc.*, No. 06-60557-CIV, 2008 WL 828124, at *3 (S.D. Fla. Mar. 27, 2008)); *see also NuVasive, Inc. v. Absolute Med., LLC*, No. 6:17-CV-2206-CEM-GJK, 2021 WL 7184488, at *11 (M.D. Fla. Nov. 12, 2021), *reconsideration denied*, No. 6:17-CV-2206-CEM-GJK, 2021 WL 7186137 (M.D. Fla. Nov. 16, 2021) (holding that an expert's opinions were admissible because the opinions "sufficiently demonstrate[d] a causal nexus and a sufficiently reliable methodology"). Further, as

---

[14] The Court notes, however, that contrary to Plaintiffs' arguments, Defendants did not concede that Mr. Tepp is qualified to offer his opinion on "all financial- and economic-related topics." ECF No. [91] at 4. As a practical matter, Mr. Tepp cannot be deemed to be qualified on all financial- and economic-related topics without any limit. Rather, Mr. Tepp is qualified to opine on damages.

this Court noted above, the Eleventh Circuit has held in *Edwards*, 580 F. App'x. at 823, that "[a] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." In this case, each of Mr. Tepp's challenged opinions helps establish the nexus between the infringing activity and the gross revenue figure offered by Mr. Tepp. Further, Mr. Tepp explained how the challenged opinions relate to his damages opinions during his deposition. *See* ECF No. [51-6]. For instance, Mr. Tepp's discussion regarding the packaging of the SRO product provides context for VPX's use of the trademark and the nexus between the accused use and revenues. *See id.* at 22. Given that courts have required experts to establish the basis of their opinions, Mr. Tepp will be given the opportunity to establish the nexus between the infringing activity and his estimation of damages.

In addition, the Court notes that an expert's qualifications do not need to be narrowly tailored to the precise circumstances of the case. *See J.G.*, 2013 WL 752697, at *3 (merely "because [the expert's] experience does not precisely match the matter at hand" does not render the expert unqualified) (citations omitted). An expert may "testify regarding narrow sub-topics within his broader expertise – notwithstanding a lack of specific experience with the narrower area – as long as his testimony would still assist a trier of fact." *Remington v. Newbridge Secs. Corp.*, No. 13-60384-CIV, 2014 WL 505153, at *4 (S.D. Fla. Feb. 7, 2014). A review of the challenged opinions indicates that they are sub-topics that are at least tangentially related to financial matters, and as noted above, Mr. Tepp is qualified to opine on financial matters.[15]

---

[15] To the extent that Defendants stress that Mr. Tepp conceded that he does not have expertise in trademark infringement during his deposition, *see* ECF No. [51-6] at 17, 18, the Court notes that Mr. Tepp's challenged opinions are not whether trademark infringement has occurred but how various factors related to trademark infringement were incorporated into his damages analysis. In other words, Mr. Tepp is not opining as to whether there has been trademark infringement. As such, Mr. Tepp's concession that he does not have expertise in trademark infringement is inapposite.

Finally, as this Court has previously held, "[q]uestions about the expert's lack of specific knowledge regarding a sub-topic within his industry are more appropriately considered as a challenge to the foundation for his opinion, not his qualifications." *Balthazar Mgmt., LLC v. Beale St. Blues Co., Inc.*, No. 17-CV-81214, 2018 WL 6928698, at *3 (S.D. Fla. Oct. 30, 2018). As such, Defendants' challenge of Mr. Tepp's qualifications is more appropriately a challenge of the foundation of Mr. Tepp's opinions. Defendants may cross-examine Mr. Tepp regarding his purported lack of specific knowledge regarding any sub-topic to challenge the foundation of his opinions, but Defendants' challenge of Mr. Tepp's qualifications does not warrant exclusion of Mr. Tepp's opinions at this stage.[16]

### b. Helpfulness

Defendants argue Mr. Tepp's challenged opinions are unhelpful because they are a recitation of his interpretation of documents that is nothing more than what "lawyers for the parties can offer in closing arguments." ECF No. [62] at 5 (quoting *Xtec, Inc. v. CardSmart Techs., Inc.*, No. 11-22866-CIV, 2014 WL 10250974, at *4 (S.D. Fla. Dec. 4, 2014)). Further, Defendants argue that Mr. Tepp's challenged opinions are cumulative given Plaintiffs' other expert witness Mr. David Wisdom ("Mr. Wisdom"), who will be opining on the same topics.

Plaintiffs respond that Mr. Tepp is not offering a mere recitation of his interpretation of documents but rather relaying information that formed the basis of his damages opinion. *See* ECF

---

[16] As a final note, the Court is not persuaded by Defendants' reliance on *United Country Real Est., LLC v. United Realty Grp., Inc.*, No. 16-CV-60154, 2017 WL 1293618, at *4 (S.D. Fla. Feb. 28, 2017), in their Reply. *See* ECF No. [91] at 4-7. In that case, the court held that the expert at issue was an expert in the field of marketing and consumer information processing, and therefore, the expert was qualified to opine on brand association. In this case, Mr. Tepp does not have expertise in marketing and consumer information processing, and therefore cannot opine on brand association. However, Mr. Tepp is not being offered to opine on brand information or other trademark issues. Rather, as stated above, his challenged opinions are regarding how various factors related to trademark infringement are factored into his damages analysis. Given his expertise in finance and economics, he is qualified to opine on factors that shaped his damages analysis.

No. [76] at 11. Plaintiffs also argue that the potential for overlap between the testimony of Mr.
Tepp and Mr. Wisdom on certain topics does not warrant the exclusion of Mr. Tepp's testimony
on those topics at this stage. *See id.* Plaintiffs note that several courts have refused to exclude
testimony as cumulative until courts have had an opportunity to consider whether the testimony is
indeed cumulative at trial. *See id.* (quoting *Bodner v. Royal Caribbean Cruises, Ltd.*, No. 17-
20260, 2018 WL 2471215, at *5 (S.D. Fla. April 10, 2018) ("[T]he fact that [experts'] testimony
and opinions may overlap to some extent does not demonstrate a sufficient basis of . . . needless
presentation of cumulative evidence under Fed. R. Evid. 403 to bar . . . testimony."); *Mighty v.
Miami-Dade Cty.*, No. 14-23285-CIV, 2019 WL 4306942, at *7 (S.D. Fla. Aug. 9, 2019), *report
and recommendation adopted*, No. 14-23285-CIV, 2019 WL 4305847 (S.D. Fla. Sept. 10, 2019)
(denying a motion to exclude certain testimony as cumulative because it was "premature")).

The Court agrees with Plaintiffs. First, Defendants' reliance on *Xtec*, 2014 WL 10250974,
at *4, is unpersuasive. In that case, the expert offered to opine on the "meaning, intent, or purpose"
of certain documents. *See id.* at *5. In contrast, in this case, Mr. Tepp is not offering to testify on
the meaning, intent, or purpose of any document, but rather how he used the documents to form
his damages opinion. Such testimony is not testimony that "lawyers for the parties can offer in
closing arguments." *Id.* at *4.

Second, with respect to the cumulative evidence argument, the Court notes that it is
premature to determine that the challenged opinions will be cumulative. Even if cumulative, the
Court cannot determine at this stage whether the danger of "needlessly" presenting cumulative
evidence will substantially outweigh the probative value of the evidence under Rule 403. *See
Bodner*, 2018 WL 2471215, at *5. As such, Defendants' argument on this matter is unpersuasive.[17]

---

[17] Defendants note in their Reply that Mr. Tepp testified that some of the underlying facts of this case do
not affect his damages analysis. *See* ECF No. [91] at 5. Defendants appear to argue that opinions regarding

Defendants may raise this argument at trial when the Court can address the argument in the proper context.

In sum, Mr. Tepp will be permitted to offer testimony on the matters set forth in his expert report.[18]

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs' Motion, **ECF No. [60]**, is **DENIED IN PART AND GRANTED IN PART**.

2.  Plaintiffs' Sealed Motion, **ECF No. [61]**, is **DENIED IN PART AND GRANTED IN PART**.

3.  Dr. Stanton will be permitted to offer testimony on the matters set forth in his expert report, except for any matters related to the similarity of advertising media.

4.  Defendants' Motion, **ECF No. [63]**, is **DENIED**.

5.  Defendants' Sealed Motion, **ECF No. [62]**, is **DENIED**.

6.  Mr. Tepp will be permitted to offer testimony on the matters set forth in his expert report.

---

some of the underlying facts are, therefore, irrelevant and unhelpful. *See id.* However, a review of Mr. Tepp's testimony suggests that he was answering questions about whether his damages opinion would be disturbed if some of the underlying facts changed. *See* ECF No. [51-6] at 37-38. In answering that his damages opinion would not be disturbed, he was testifying as to the strength of his opinions, not whether the underlying facts were irrelevant. At other times, he explained that the challenged opinions gave him background knowledge of the facts to inform his damages analysis. *See* ECF No. [53-6] at 24. As such, Defendants' argument on this matter is unpersuasive.

[18] As a final note, Defendants present an overarching argument that Mr. Tepp's challenged opinions go beyond the scope of what he has been retained for. *See* ECF No. [62] at 4-5. As noted above, under *Daubert*, the movant may challenge an expert's qualifications, reliability, and helpfulness. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). To the extent that Defendants' overarching argument can be considered a challenge of Mr. Tepp's qualifications – namely, that he is not qualified to offer opinions beyond the scope of what he has been retained for – the Court has addressed the arguments above. To the extent that Defendants' overarching can be considered a challenge of the helpfulness of Mr. Tepp's opinion – namely, that his opinions on such matters are not relevant – the Court notes that Mr. Tepp's opinions are helpful in establishing the nexus of his damages opinion.

Case No. 21-cv-60451-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 19, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record