UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JHO INTELLECTUAL PROPERTY
HOLDINGS, LLC, and
VITAL PHARMACEUTICALS, INC.,

     Plaintiffs /Counterclaim Defendants,

     v.                           Case No. 0:21cv60451

IGNITE INTERNATIONAL, LTD.,
IGNITE BEVERAGES INC., and
JAMES GRACELY

     Defendants / Counterclaim Plaintiffs.

_____/

**PARTIES' PROPOSED JURY INSTRUCTIONS**

Pursuant to the Court's Amended Order Scheduling Trial and Order of Instructions Before Calendar Call (Dkt. 102), Plaintiffs, JHO Intellectual Property Holding, LLC and Vital Pharmaceuticals, Inc. and Defendants, Ignite International, Ltd., and Ignite Beverages, Inc., submit the Parties' Proposed Jury Instructions.

**[INTENTIONALLY LEFT BLANK
PROCEED TO NEXT PAGE]**

1

**GENERAL PRELIMINARY INSTRUCTION**
**(11th Circuit Pattern Instruction No. 1.1)**

Members of the Jury: Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's

arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case. I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have; any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiffs, JHO Intellectual Property Holdings, LLC (who I'll refer to as "JHO Intellectual") and Vital Pharmaceuticals, Inc., (who I'll refer to as "Vital Pharmaceuticals") have brought claims against the Defendants, Ignite International, Ltd., (who I'll refer to as "Ignite International") and Ignite Beverages, Inc. (who I'll refer to as "Ignite Beverages") for trademark infringement, unfair competition, and seeking to cancel a trademark owned by Defendants (which I'll refer to as the "Z-RO mark" or "Z-RO trademark"). Defendants denied the infringement, unfair competition, and trademark cancellation claim and have counter-sued JHO Intellectual and Vital Pharmaceuticals seeking to cancel JHO Intellectual's trademark (which I'll refer to as the "SRO mark" or "SRO trademark").

Plaintiffs, JHO Intellectual and Vital Pharmaceuticals, contend that Defendants, Ignite International and Ignite Beverages, infringed, and continue to infringe, the SRO mark by Defendants' use in commerce of the Z-RO mark in connection with the sale of Defendants' energy drink products. Plaintiffs also claim that Defendants' Z-RO trademark registration should be cancelled. Defendants deny Plaintiffs' claims that there could be any confusion between the use of their Z-RO mark and the SRO mark. Defendants also claim that the SRO trademark registration should be cancelled because

Plaintiffs have never used the SRO trademark in the manner described in its registration. Plaintiffs dispute this claim.

Burden of proof:

JHO Intellectual and Vital Pharmaceuticals have the burden of proving their claims by what the law calls a "preponderance of the evidence." That means JHO Intellectual and Vital Pharmaceuticals must prove that, in light of all the evidence, what they claim is more likely true than not. So, if you could put the evidence favoring JHO Intellectual and Vital Pharmaceuticals and the evidence favoring Ignite International and Ignite Beverages on opposite sides of balancing scales, JHO Intellectual and Vital Pharmaceuticals need to make the scales tip to their side. If JHO Intellectual and Vital Pharmaceuticals fail to meet this burden, you must find in favor of Ignite International and Ignite Beverages as to JHO Intellectual and Vital Pharmaceuticals' affirmative claims.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed,  regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

Ignite International and Ignite Beverages have also brought a counterclaim seeking to cancel the SRO trademark registration based on abandonment. On this abandonment counterclaim, Ignite International and Ignite Beverages have the same burden of proof—preponderance of the evidence— that JHO Intellectual and Vital Pharmaceuticals have for the claims I just described.

Additionally, Ignite International and Ignite Beverages have brought a claim seeking to cancel the SRO trademark registration based on a fraudulent filing. For this fraud claim, Ignite International and Ignite Beverages have the burden of proving the claim by what the law calls "clear and convincing

evidence." This is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain.

Conduct of the jury:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base

6

your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room. Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove. Next, JHO Intellectual and Vital Pharmaceuticals will present their witnesses and ask them questions. After JHO Intellectual and Vital Pharmaceuticals questions the witness, Ignite International and Ignite Beverages may ask the witness questions – this is called "cross-examining" the witness. Then Ignite International and Ignite Beverages will present their witnesses, and JHO Intellectual and Vital Pharmaceuticals may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it. After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law. You'll then go to the jury room to deliberate

## JURY QUESTIONS
### (11th Circuit Pattern Instruction No. 1.4)

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**JURY QUESTIONS**
**(11th Circuit Pattern Instruction No. 2.1)**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

**USE OF DEPOSITIONS**
**(11th Circuit Pattern Instruction No. 2.2)**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

## USE OF INTERROGATORIES
### (11th Circuit Pattern Instruction No. 2.6)

You'll now hear answers that [name of party] gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, [name of party] gave the answers in writing while under oath. You must consider [name of party]'s answers to as though [name of party] gave the answers on the witness stand.

**INTRODUCTION**
**(11th Circuit Pattern Instruction No. 3.1)**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

JHO INTELLECTUAL PROPERTY
HOLDINGS, LLC, and
VITAL PHARMACEUTICALS, INC.,

     Plaintiffs /Counterclaim Defendants,

     v.                                                                    Case No. 0:21cv60451

IGNITE INTERNATIONAL, LTD.,
IGNITE BEVERAGES INC., and
JAMES GRACELY

     Defendants / Counterclaim Plaintiffs.
_____/

COURT'S INSTRUCTIONS TO THE JURY

Members of the jury: It's my duty to instruct you on the rules of law that you must use in deciding this case. When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

12

**THE DUTY TO FOLLOW INSTRUCTIONS – CORPORATE PARTY INVOLVED**
**(11th Circuit Pattern Instruction No. 3.1)**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

## CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE; ARGUMENT OF COUNSEL; COMMENTS BY THE COURT
### (11th Circuit Pattern Instruction No. 3.3)

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

## CREDIBILITY OF WITNESSES
### (11th Circuit Pattern Instruction No. 3.4)

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

**IMPEACHMENT OF WITNESSES BECAUSE OF INCONSISTENT STATEMENTS**
**(11th Circuit Pattern Instruction No. 3.5.1)**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**EXPERT WITNESS**
**(11th Circuit Pattern Instruction No. 3.6.1)**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**RESPONSIBILITY FOR PROOF – PLAINTIFF'S CLAIMS, CROSS CLAIMS,
COUNTERCLAIMS – PREPONDERANCE OF THE EVIDENCE
(11th Circuit Pattern Instruction No. 3.7.1)**

Except where I note otherwise, in this case, it is the responsibility of the party bringing any claim to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the party's claim is more likely true than not true. If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention. When more than one claim is involved, you should consider each claim separately. In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them. If the proof fails to establish any essential part of a party's claims by a preponderance of the evidence, you should find for the opposing party as to that claim.

## TRADEMARK INFRINGEMENT – REGISTERED TRADEMARK
### (11th Circuit Pattern Instruction No. 10.1)

JHO Intellectual and Vital Pharmaceuticals claim Ignite International and Ignite Beverages are infringing on the registered SRO trademark. To prove their claim, JHO Intellectual and Vital Pharmaceuticals must prove the following facts by a preponderance of the evidence:

1. JHO Intellectual owns a trademark that is entitled to protection; and

2. That Ignite International and Ignite Beverages are using a mark that infringes upon JHO Intellectual's trademark.

You are instructed and must accept as a fact that JHO Intellectual owns a federal registration for the SRO trademark.. Ignite International and Ignite Beverages dispute the validity of SRO's federal registration.  It is their burden to prove the registration is invalid by a preponderance of the evidence.

If JHO owns a valid federal registration for the SRO Mark, you must also find that JHO Intellectual then licensed use of the that registration to Vital Pharmaceuticals.

JHO Intellectual may acquire rights to the SRO mark through another party's use of the trademark, even if JHO Intellectual did not use the SRO mark.  As the owner of the SRO trademark, JHO Intellectual may enter into an agreement that permits another person to use the trademark. This agreement is called a license. Here, JHO Intellectual contends it is the licensor and Vital Pharmaceuticals, the party permitted to use the trademark, is the licensee. An exclusive license may include the right to prevent others from using the same or a similar trademark that, in the marketplace, is likely to cause confusion. A license does not have to be in writing.

For a license to be valid, the licensor must retain adequate control over the quality of goods sold under the trademark. A licensee acquires no ownership interest in the licensed trademark. Instead, the licensee acquires only those rights granted by the license.

If JHO Intellectual owns a valid federal registration of the SRO trademark, Ignite International and Ignite Beverages are deemed to have knowledge of the registration and of the rights claimed in

the registration. This is known as "constructive notice," and Ignite International and Ignite Beverages cannot claim that they adopted their Z-RO mark without knowledge of the SRO trademark. In this case, JHO Intellectual and Vital Pharmaceuticals would enjoy nationwide constructive notice of their rights dating back to the filing date of the SRO application, which is June 21, 2013. If you find that Ignite International and Ignite Beverages met their burden of proving the federal registration invalid, then the registration does not provide either a presumption that that JHO has prior trademark rights, or any constructive notice of such rights.

If SRO's federal registration is invalid, they may still have rights in the SRO trademark based on their prior use of that mark.   It is JHO's burden to prove that they have such rights by a preponderance of the evidence.

<u>Infringement: Introductory Jury Charge</u>

If you have determined that JHO Intellectual owns a trademark that is entitled to protection, you must next consider whether Ignite International and Ignite Beverages infringed the SRO trademark. The test for infringement is whether Ignite International and Ignite Beverages' used its Z-RO mark in a manner that is "likely to cause confusion" with the SRO trademark.

That is, you must determine if Ignite International and Ignite Beverages, without JHO Intellectual's consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believes that Ignite International and Ignite Beverages' goods come from, are affiliated with, are approved by, or sponsored by JHO Intellectual and Vital Pharmaceuticals.

It is not necessary that the trademark used by Ignite International and Ignite Beverages be an exact copy of the SRO trademark. Instead, JHO Intellectual and Vital Pharmaceuticals must

demonstrate, by a preponderance of the evidence, that Ignite International and Ignite Beverages' use of the Z-RO mark is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

Infringement

JHO Intellectual and Vital Pharmaceuticals claim that Ignite International and Ignite Beverages' use of the Z-RO mark infringed the SRO mark. For JHO Intellectual and Vital Pharmaceuticals to succeed on this claim you must find by a preponderance of the evidence that Ignite International and Ignite Beverages:

1.     used the Z-RO trademark in connection with the sale or offer to sell goods;

2.     used the Z-RO trademark in commerce; and

3.     used the Z-RO trademark in a manner that is likely to:

     a.     cause confusion, mistake, or deception as to

     b.     the source, origin, affiliation, approval, or sponsorship of Ignite International and Ignite Beverages' goods.

Infringement: Likelihood of Confusion (Seven-Factor Test)

There are seven factors you can use to determine whether a likelihood of confusion exists. No single factor or consideration controls, and JHO Intellectual and Vital Pharmaceuticals are not required to prove all, or even most, of the factors are present in any particular case. You may also use factors other than these seven. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

1.     Type and Strength of the SRO Trademark

The first factor is the "type and strength" of the trademark. Trademarks come in different "types" or categories, namely, "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength.

21

Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it. I will now describe each type of trademark in the order of their general relative strength.

      a.    <u>Generic:</u>

A claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good commonly is known. An example of a generic trademark is "escalator" for moving stairs.

Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is a generic term is viewed from the perspective of a member of the public evaluating the trademark. Claimed generic trademarks are not protectable as marks. They cannot be registered with the U.S. Patent and Trademark Office.

      b.    <u>Descriptive:</u>

A "descriptive" trademark only describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good provided under it. An example of a descriptive trademark would be VISION CENTER for an eyeglasses store. Descriptive trademarks are eligible for registration with the U.S. Patent and Trademark Office if the trademark has acquired "secondary meaning." A trademark has acquired secondary meaning if the primary significance of the trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining whether secondary meaning exists:

1.    The length and nature of the trademark's use;

2.    The nature and extent of advertising and promotion of the trademark;

3. The efforts of the trademark owner to promote a conscious connection between the trademark and its business; and

4. The degree to which the public recognizes JHO Intellectual and Vital Pharmaceuticals' good by the trademark.

In this case, I have determined that the SRO trademark is covered by an incontestable registration on the Principal Register. The effect of that determination is that the registration is conclusive evidence that the trademark is at least descriptive with secondary meaning. You must accept that the SRO trademark was at least descriptive and possessed secondary meaning at the time Vital Pharmaceuticals applied for the registration.

c.   Suggestive:

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods then the trademark suggests the features of the good. An example of a suggestive trademark is ICEBERG for a refrigerator. Suggestive trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

d.   Arbitrary and Fanciful or Coined:

An "arbitrary" trademark is a real word but has no logical relationship, to the underlying goods. An example of an arbitrary trademark is DOMINO for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is EXXON for gasoline.

Arbitrary and fanciful or coined trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

e.   Additional Considerations Relating To Trademark Strength:

23

When evaluating the strength of the SRO trademark, you may also consider the extent of any use by third parties of similar trademarks, JHO Intellectual and Vital Pharmaceuticals' promotional expenditures, the volume of sales under the SRO trademark, and whether the SRO trademark registration has achieved incontestable status.

2.    <u>Similarity of the Parties' Trademarks</u>

In evaluating whether trademarks are similar, you may consider the "overall impression" that the SRO and Z-RO trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

3.    <u>Similarity of the Parties' Goods</u>

This factor considers not only whether the consuming public can readily distinguish between the parties' goods, but also whether the goods at issue are of a kind that the public attributes to a single source.

4.    <u>Similarity of the Parties' Sales Channels, Distribution, and Customers</u>

This factor considers where, how, and to whom the parties' goods are sold. Similarities increase the possibility of consumer confusion, mistake, or deception.

5.    <u>Similarity of the Parties' Advertising Media</u>

This factor looks to each party's method of advertising. It is not a requirement that JHO Intellectual and Vital Pharmaceuticals, on one hand, and Ignite International and Ignite Beverages, on the other hand, advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

6.    <u>Ignite International, Ltd., and Ignite Beverages, Inc.'s Intent</u>

You may also consider whether Ignite International and Ignite Beverages intended to infringe on the SRO trademark. That is, did Ignite International and Ignite Beverages adopt their Z-RO trademark with the intention of deriving a benefit from JHO Intellectual and Vital Pharmaceuticals' reputation? If you determine that Ignite International and Ignite Beverages intentionally ignored the potential for infringement, you may impute to Ignite International and Ignite Beverages an intent to infringe.

7.     Actual Confusion

Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean Ignite International and Ignite Beverages is not liable for trademark infringement.

The evidence of actual confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion using the following factors:

1.     The amount and duration of the confusion;

2.     The degree of familiarity the confused party has with the goods;

3.     The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a noncustomer); and

4.     The alleged number of people who are actually confused (for example, whether the confused person is an actual customer or someone else).

If you find that Ignite International and Ignite Beverages have infringed the SRO trademark, you must next consider Ignite International and Ignite Beverages' counterclaim to cancel the SRO trademark.

25

Citations: *SM Licensing Corp. v. U.S. Medical Care Holdings LLC*, 2007 WL 2051009 (July 13, 2007) (burden of proof to demonstrate common law ownership of trademark is preponderance of the evidence);

**10.3 Defenses to Claim of Infringement of a Trademark**

If you find that JHO and VPX have shown a likelihood of confusion, you must consider Ignite's defenses. Ignite claims that it is not liable to JHO and VPX for trademark infringement because one or more of the following defenses exist. Ignite has the burden of proving defenses to trademark infringement by a preponderance of the evidence.

Abandonment of a trademark is one such defense to a claim of infringement. Again, to prove abandonment, Ignite must prove the following by a preponderance of the evidence:

1. JHO and VPX discontinued the bona fide use of their trademark, and did so with the intent to not resume their use in the reasonably foreseeable future. If you find that JHO and VPX have not used the trademark for three consecutive years, you may presume that they did not intend to resume use of the trademark, but JHO and VPX can rebut that presumption by producing evidence that they intended to resume use; or

2. JHO and VPX acted or failed to act, and as a result their trademark no longer identifies the source of their goods and has become a generic term for the associated goods.

*Affirmative Defense – Equitable Estoppel*

Ignite has raised the defense of equitable estoppel.  To establish this defense, Ignite must prove all of the following:

1.   *That JHO and VPX did not use the trademark for its registered use. Alternatively, Ignite can prove that JHO and VPX have not used the trademark for at least three consecutive years with no bona fide intent to resume such use in the foreseeable future.*

2.   *Ignite relied in good faith upon JHO and VPX's actions.*

3.   *Ignite's reliance on JHO and VPX's actions caused Ignite harm.*

**AUTHORITIES**

*State v. Harris, 881 So.2d 1079, 1084 (Fla. 2004); United Auto. Ins. Co. v. Chiropractic Clinics of S. Fla., PL, 322 So. 3d 740, 743 (Fla. 3d DCA 2021); Richards v. Dodge, 150 So.2d 477, 481 (Fla. 2d DCA 1963).*

*Affirmative Defense – Unclean Hands*

*Ignite has raised the defense of unclean hands. To establish this defense, Ignite must prove all of the following:*

1. *JHO and VPX committed a wrongdoing that is directly related to the claim.*

2. *Ignite was personally injured by the wrongdoing.*

*AUTHORITIES*

*Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 801 (11th Cir. 2015).*

29

**COUNTERCLAIMS FOR CANCELLATION OF A FEDERAL TRADEMARK REGISTRATION**
**(11th Circuit Pattern Instruction No. 10.4)**

I have instructed you to find that JHO Intellectual has a registered trademark **that is presumed to be valid**.  Ignite International and Ignite Beverages dispute that the registration is valid. I have also instructed you that if JHO Intellectual has a valid registration, then it enjoys nationwide priority of rights and nationwide constructive notice of its rights. You must now consider Ignite International and Ignite Beverages' claim that the SRO registration is invalid, because the trademark was abandoned and the trademark was procured and maintained through a fraudulent filing in the U.S. Patent and Trademark Office or because it was not used for the goods recited in the registration, or was abandoned by JHO. For the abandonment or non-use counterclaim, you must determine whether Ignite International and Ignite Beverages have proved by a preponderance of the evidence that the SRO trademark registration should be cancelled. For the fraud counterclaim, you must determine whether Ignite International and Ignite Beverages have proved by clear and convincing evidence that the SRO trademark registration should be cancelled.

***Not used in Commerce as of date Plaintiffs represented the SRO mark was being used in commerce***

The right to a particular trademark grows out of the trademark's use. Use is sufficient to establish rights if it is public enough that it identifies the goods in questions as those of the person using the trademark. It is sufficient to establish valid rights if the trademark is used in genuine commercial transactions and the use is consistent and continuous.  Mere "token use" of the trademark – use made solely to reserve rights in the trademark – is not enough to establish valid rights. Wide public recognition of the trademark is not required, but secret or undisclosed use is not adequate

As part of the process of registering a trademark with the Patent and Trademark Office, and applicant must swear under oath that it is using its trademark in commerce in connection with the

goods covered by the application. If it was not using the trademark in commerce in connection with the goods covered by the SRO trademark application, the trademark registration is cancelled.

A trademark is used in commerce and in connection with goods when it is placed on:

1.  The goods or their containers or the associated displays,

2.  The tags or labels affixed to the goods or their containers,

3.  The documents associated with the goods or their sale, and

4.  The goods are sold or transported in commerce in more than one state or in the United States and a foreign country.

Abandonment

Abandonment of a trademark is a ground for the cancellation of a trademark registration. To prove abandonment, Ignite International and Ignite Beverages must prove by a preponderance of the evidence that:

1.  Both JHO Intellectual discontinued the bona fide use of the SRO trademark and did so with intent to not resume their use in the reasonably foreseeable future. If you find that JHO Intellectual retained adequate control over the quality of the goods sold by Vital Pharmaceuticals under the licensed SRO trademark, then Vital Pharmaceutical's use of the SRO trademark will inure to the benefit of the JHO Intellectual and should be treated as JHO Intellectual's own continued use of the SRO trademark. If you find that JHO Intellectual has not used the SRO trademark, either directly or through a licensee, for three consecutive years, you may presume that JHO Intellectual did not intend to resume use of the trademark, but JHO Intellectual can rebut that presumption by producing evidence that it intended to resume use; or

2.      JHO Intellectual and Vital Pharmaceuticals acted or failed to act, and as a result, the SRO trademark no longer identifies the source of JHO Intellectual or Vital Pharmaceuticals' goods and has become a generic term for the associated goods.

<u>False or Fraudulent Filing</u>

If the SRO registration was obtained from, or has been maintained in, the U.S. Patent and Trademark Office through a false or fraudulent filing, the registration may be cancelled. To succeed on this ground for cancellation, Ignite International and Ignite Beverages must prove by clear and convincing evidence that:

1.      JHO Intellectual and Vital Pharmaceuticals knowingly made a false representation of fact to the U.S. Patent and Trademark Office;

2.      The false representation was made with an intent to deceive; and

3.      The false representation was material in the sense that the U.S. Patent and Trademark Office would not have issued or maintained the SRO trademark registration in the absence of the false representation.

**TRADEMARK INFRINGEMENT – UNREGISTERED TRADEMARK (CONT.)**
**(11th Circuit Pattern Instruction No. 10.1)**

Cancellation of a registration on this ground does not necessarily mean that JHO Intellectual does not enjoy valid rights to the covered trademark. If you find that the SRO trademark registration should be cancelled on this ground, you must then determine whether JHO Intellectual still has rights to the SRO trademark independent of its registration. To do so, you must again evaluate the SRO trademark using the factors I previously described, but without any of the presumptions that accompany a registered trademark.

<u>Validity</u>

You must first find that JHO International owns protectable rights to a trademark. JHO International must prove by a preponderance of the evidence that the trademark is:

1: Used in commerce;

2: Distinctive; and

3: Nonfunctional

<u>Used in Commerce</u>

The right to a particular trademark grows out of the trademark's use. Use is sufficient to establish rights if it is public enough that it identifies the goods in question as those of the person using the trademark. It is sufficient to establish valid rights if the trademark is used in genuine transactions in commerce and the use is consistent and continuous. Mere "token use" of the trademark – use made solely to reserve rights in the trademark – is not enough to establish valid rights.

Wide public recognition of the trademark is not required, but secret or undisclosed use is not adequate. A trademark is used in commerce and in connection with goods when it is placed on:

1. the goods or their containers or the associated displays,

2. the tags or labels affixed to the goods or their containers, or

3. the documents associated with the goods or their sale, and

4. the goods are sold or transported in commerce in more than one state, or in the United States and a foreign country.

JHO Intellectual may acquire rights to a trademark through another party's use of the trademark, even if JHO Intellectual did not use the trademark. JHO Intellectual may enter into an agreement that permits another person to use the trademark. This agreement is called a license; JHO Intellectual is the licensor and the party permitted to use the trademark is the licensee. An exclusive license may include the right to prevent others from using the same or a similar trademark that, in the marketplace, is likely to cause confusion. A license does not have to be in writing. For a license to be valid, the licensor must retain adequate control over the quality of goods sold under the trademark. A licensee acquires no ownership interest in the licensed trademark. Instead, the licensee acquires only those rights granted by the license.

<u>Distinctiveness</u>

For JHO Intellectual to have a protectable trademark, the trademark must be distinctive. In other words, the trademark must be recognized in its market as a trademark.

To be distinctive, a trademark can either:

1. Be inherently distinctive; or

2. Have acquired distinctiveness.

You must look at the trademark as a whole when evaluating the distinctiveness or lack of distinctiveness.

<u>Acquired Distinctiveness</u>

A trademark is protectable if it has "acquired distinctiveness," also known as "secondary meaning." A claimed trademark has acquired secondary meaning if the primary significance of the

trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining secondary meaning:

1. The length and nature of the trademark's use;

2. The nature and extent of advertising and promotion of the trademark;

3. The efforts of the trademark's owner to promote a conscious connection between the trademark and its business; and

4. The degree to which the public recognizes the good by the trademark.

<u>Inherent Distinctiveness</u>

A trademark also is protectable if it is inherently distinctive. To determine whether a claimed trademark is inherently distinctive, you must first place it into one of four "types" or categories. Trademarks come in different "types" or categories, namely: "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of trademark is relevant to the trademark's strength.

I will now describe each type of trademark in the order of their general relative strength:

a. Generic:

A claimed trademark is generic if it is the word, name, symbol, or device, or any combination thereof, by which the good is known. An example of a generic trademark is "escalator" for moving stairs. Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap. Whether a claimed trademark is generic is viewed from the perspective of a member of the relevant public evaluating the trademark. Claimed marks that are generic are not protected and cannot be registered with the U.S. Patent and Trademark Office.

b. Descriptive:

A claimed trademark is "descriptive" if it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good. An example of a descriptive trademark would be VISION CENTER for an eyeglasses store. Descriptive trademarks are eligible for protection if they have acquired "secondary meaning." I previously instructed you on how to determine if a claimed trademark has acquired secondary meaning.

c. Suggestive:

A "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the trademark and the goods, then the trademark suggests the features of the goods. An example of a suggestive trademark is ICEBERG for a refrigerator. Suggestive trademarks are eligible for protection without proof of secondary meaning.

d. Arbitrary and Fanciful or Coined:

An "arbitrary" trademark is a trademark that is a real word but has no logical relationship to the underlying goods. An example of an arbitrary trademark is DOMINO for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is EXXON for gasoline.

Arbitrary and fanciful or coined trademarks are eligible for protection without proof of secondary meaning.

<u>Nonfunctionality</u>

The third element that JHO Intellectual must prove is that the trademark is primarily nonfunctional. A claimed trademark is functional if it is essential to the use or purpose of the good, or if it affects the good's cost or quality. In other words, if allowing JHO Intellectual to have exclusive use of the trademark would put competitors at a disadvantage that does not relate to JHO Intellectual's

36

reputation, then the trademark may be functional. For example, a trademark for the color of ice cream – such as white for vanilla, pink for strawberry, and brown for chocolate – would be functional if the color identifies the flavor of the ice cream.

In evaluating non-functionality, you must keep in mind that a claimed trademark may be primarily nonfunctional even if it serves a practical purpose. The fact that individual components of a claimed trademark are functional does not prevent the overall combination of those elements from being primarily nonfunctional. Nevertheless, individually functional elements are not valid merely because they are part of an overall nonfunctional trademark.

<u>Introductory Infringement Jury Charge</u>

It is JHO's burden to prove its rights in its unregistered SRO trademark by a preponderance of the evidence.  If you have determined that JHO Intellectual's unregistered SRO trademark is entitled to protection, you must next consider whether Ignite International and Ignite Beverages infringed the SRO trademark. The test for infringement of an unregister mark is the same test I outlined above for infringement of a registered trademark and that is whether Ignite International's and Ignite Beverages' used the Z-RO trademark in a manner that is "likely to cause confusion" with JHO's unregistered SRO trademark. That is, you must determine if Ignite International and Ignite Beverages, without JHO Intellectual's consent, used the same or a similar trademark in connection with the sale of, or the offer to sell, goods in a manner that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believes that Ignite International and Ignite Beverages' goods come from, are affiliated with, are approved by, or sponsored by JHO Intellectual or Vital Pharmaceuticals. It is not necessary that the Z-RO trademark be an exact copy of SRO trademark. Rather, JHO Intellectual must demonstrate, by a preponderance of the evidence, that Ignite International and Ignite Beverages use of the Z-RO trademark is, when viewed in its entirety, likely

to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

Citation: *SM Licensing Corp. v. U.S. Medical Care Holdings LLC*, 2007 WL 2051009 (July 13, 2007) (burden of proof to demonstrate common law ownership of trademark is preponderance of the evidence.)

**TRADEMARK INFRINGEMENT – REGISTERED TRADEMARK (CONT.)**
**(11th Circuit Pattern Instruction No. 10.1)**

Trademarks: Remedies

If you find that JHO Intellectual owns a valid registration for the SRO trademark or owns a valid unregistered trademark for the SRO trademark and that Ignite International and Ignite Beverages have infringed it, you must consider whether, and to what extent, monetary relief should be awarded.

Defendants' Profits and Calculation of Profits

In determining the appropriate monetary relief to award, you may make an award based on an accounting of Ignite International and Ignite Beverages' profits if you find that:

1.    Ignite International and Ignite Beverages' conduct was willful and deliberate;

2.    Ignite International and Ignite Beverages were unjustly enriched; or

3.    An award of Ignite International and Ignite Beverages' profits is necessary to deter Ignite International and Ignite Beverages' future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.

"Unjust enrichment" occurs if Ignite International and Ignite Beverages receive a benefit to which they are not entitled.

In determining Ignite International and Ignite Beverages' profits, JHO Intellectual and Vital Pharmaceuticals only are required to prove Ignite International and Ignite Beverages' gross sales. Ignite International and Ignite Beverages may then prove the amount of sales made for reasons other than the infringement. Ignite International and Ignite Beverages also may prove their costs or other deductions which they claim should be subtracted from the amount of their sales to determine their profits on such sales. Any costs or deductions that Ignite International and Ignite Beverages prove by a preponderance of the evidence are required to be subtracted from the sales attributable to the

infringement and the difference is the amount that may be awarded to JHO Intellectual and Vital Pharmaceuticals.

<u>Nominal Damages</u>

If you find that Ignite International and Ignite Beverages infringed the SRO trademark, but you do not find that JHO Intellectual and Vital Pharmaceuticals sustained any actual damages or damages based on Ignite International and Ignite Beverages' profits, you may return a verdict for JHO Intellectual and Vital Pharmaceuticals and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.

### CANCELLATION OF A FEDERAL TRADEMARK REGISTRATION

JHO Intellectual and Vital Pharmaceuticals also claim that Ignite International and Ignite Beverages' Z-RO trademark is invalid and that its registration should be cancelled because Ignite International and Ignite Beverages' Z-RO trademark is confusingly similar to the SRO trademark.

A plaintiff's prior use of a confusingly similar trademark is grounds for cancellation of a defendant's registered trademark. To succeed on this ground for cancellation, JHO Intellectual and Vital Pharmaceuticals must prove by preponderance of the evidence that:

1.  Ignite International and Ignite Beverages' Z-RO trademark resembles the SRO trademark;

2.  JHO Intellectual acquired trade identity rights in the SRO trademark before Ignite International and Ignite Beverages used the Z-RO trademark; and

3.  Ignite International and Ignite Beverages' Z-RO trademark is likely to cause confusion when used in connection with the sale of Ignite International and Ignite Beverages' products.

**Source:** *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1559 (11th Cir. 1991); ("In order to cancel a registration under Lanham Act Section 2(d) in this case, petitioner must prove: (1) that the registered mark resembles petitioner's mark, (2) that petitioner acquired trade identity rights in the mark before the registrant used the mark, and (3) that the registered mark is likely to cause confusion when used in connection with the services of registrant."); *Shenzhen Kinwong Elec. Co., Ltd. v. Kukreja*, 18-61550-CIV, 2021 WL 5834244, at *36 (S.D. Fla. Dec. 9, 2021) ("[A] plaintiff's prior use of a confusingly similar mark is grounds for cancellation of [a] registrant's mark." (quoting *Mystique, Inc. v. 138 Intern., Inc.*, 601 F. Supp. 2d 1320, 1323 (S.D. Fla. 2009), *aff'd,* 375 Fed. Appx. 997 (11th Cir. 2010)).

**DUTY TO DELIBERATE WHEN BOTH PLAINTIFF AND DEFENDANT
CLAIM DAMAGES OR WHEN DAMAGES ARE NOT AN ISSUE
(11th Circuit Pattern Instruction No. 3.8.1)**

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone. Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**ELECTION OF FOREPERSON EXPLANATION OF VERDICT FORM**
**(11th Circuit Pattern Instruction No. 3.9)**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom. If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

43

Dated: July 18, 2022

<div style="display:flex">
<div>

*s/William Giltinan*
William G. Giltinan, Esq. (FBN 27810)
wgiltinan@carltonfields.com
**CARLTON FIELDS, P.A.**
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., Suite 1000
Tampa, FL 33607-5780
Telephone: 813-223-7000

Merrick L. Gross, Esq. (FBN 716677)
Mgross@carltonfields.com
**CARLTON FIELDS, P.A.**
2 MiamiCentral
700 NW 1st Avenue, Suite 1200
Miami, FL 33136-4118
Telephone 305-530-0050
*Attorneys for James Gracely, Ignite*
*International, Ltd. and Ignite Beverages, Inc.*

*s/ Yolanda P. Strader*
Yolanda P. Strader (FBN 70212)
yolanda@straderpaschal.com
**STRADER PASCHAL PLLC**
150 S. Pine Island Road, Suite 300
Plantation, Florida 33324
Telephone: 954-880-1260
*Attorneys for James Gracely, Ignite*
*International, Ltd. and Ignite Beverages, Inc.*

</div>
<div>

*s/ Zachary S. Foster*
Zachary S. Foster (FBN 111980)
Zachary.Foster@quarles.com
**QUARLES & BRADY LLP**
101 E. Kennedy Blvd., Suite 3400
Tampa, Florida 33602
Telephone: 813-387-0300

Nicole M. Murray
Nicole.Murray@quarles.com
**QUARLES & BRADY LLP**
300 N. LaSalle St., Suite 4000
Chicago, Illinois 60654-3406
Telephone: 312-715-5000
Facsimile: 312-715-5155

Johanna M. Wilbert
Johanna.Wilbert@quarles.com
Nathan J. Oesch
Nathan.Oesch@quarles.com
**QUARLES & BRADY LLP**
411 East Wisconsin Ave., Suite 2400
Milwaukee, Wisconsin 53202
Telephone: 414-271-5000
Facsimile: 414-271-3552
*Attorneys for Plaintiffs*

</div>
</div>